[No. 39474.    En Banc.    September 25, 1969.]

OLIVER -E. HALVORSON *et al., Appellants,* v. BIRCHFIELD BOILER, INC., *et al., Respondents.**

*Reed, McClure & Moceri,* by *Thomas W. Huber,* for appellants.

*Merrick, Burgess & Hofstedt,* by *F. Ross Burgess,* for respondents.

NEILL, J.—This appeal by plaintiffs raises the question of whether an employer is liable to a third party who is injured by an employee who has become intoxicated at a company Christmas party.

On December 24, 1964, a company Christmas party was given by defendants Birchfield Boiler, Inc., and Ace Fur-

*Reported in 458 P.2d 897.

nace and Steel/ Company for their employees and limited other invitees. The party began shortly after noon on the employers' premises. The employers furnished food and refreshments, including alcoholic beverages. The businesses had closed at noon that day and employees were not obliged to attend the party. Those who did attend were free to come and go at will. Russell D. Wolf, an employee of Birchfield Boiler attended the party at which he allegedly became intoxicated. Mr. Wolf left the party at about 2 p.m. He dropped off a fellow worker and, while driving home, struck and severely injured the plaintiff Oliver Halvorson. At the time he was struck, plaintiff was standing at the rear of his parked car in the parking lane of a Tacoma street.

Plaintiffs allege that the accident was caused by the condition of Mr. Wolf, who was so intoxicated that he was incapable of operating his automobile, and that he had become intoxicated at the Christmas party given by the defendants.

Plaintiffs further allege that the defendants were guilty of negligence because they furnished intoxicants to Mr. Wolf, knowing he was intoxicated and unable to properly operate a motor vehicle; and knowing he had had his driver's license revoked as the result of a prior accident. They further allege that defendants allowed Mr. Wolf to continue to consume liquor with knowledge that he was an alcoholic; and then permitted him to drive away from the party in his automobile.

Shortly after the commencement of the jury trial, the court granted defendants' motion to dismiss on the ground that the complaint and opening statement failed to state a claim upon which relief could be granted.

The trial court relied on *Hansen v. West Coast Wholesale Drug Co.*, 47 Wn.2d 825, 289 P.2d 718 (1955), *Hall v. Budagher*, 76 N. M. 591, 417 P.2d 71 (1966), and *Cole v. Rush*, 45 Cal. 2d 345, 289 P.2d 450 (1955), in its ruling of dismissal.

■ A motion to dismiss based on the failure of the complaint and the opening statement to state a claim upon which relief can be granted, can be granted only where it is

clear beyond doubt from reading the complaint, hearing the opening statement, and considering offers of proof that plaintiffs cannot prove facts which would entitle them to relief. *See Hofto v. Blumer,* 74 Wn.2d 321, 444 P.2d 657 (1968). Accordingly, we must accept each of plaintiffs' allegations, claims and offers of proof as verities for the purpose of viewing the correctness of the trial court's ruling of dismissal.

By Laws of 1955, ch. 372, the legislature repealed the "Dramshop Act" which provided

> Every husband, wife, child, parent, guardian, employe, or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action, in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication of such person, for all damages sustained, and the same may be recovered in a civil action in any court of competent jurisdiction. On the trial of such action, the plaintiff or plaintiffs must prove that such intoxicating liquors were sold under circumstances sufficient to lead a man of ordinary intelligence to believe that such sale would probably result in intoxication.

RCW 4.24.100 (derived from Laws of 1905, ch. 62).

At the time the dramshop statute was repealed, *Hansen v. West Coast Wholesale Drug Co., supra,* was pending before this court. The defendants had given a Christmas party at which one Mr. Bear was a guest. Bear allegedly became intoxicated at the party and, after leaving it, was involved in an automobile accident with Hansen who later died as a consequence of the accident. The trial court granted the defendant's demurrer on the ground that the complaint did not state a cause of action, basing its ruling on the theory that the liability fixed by the statute arose only from a sale of intoxicating liquor. While the case was pending on appeal, the legislature repealed the statute and this court held the issue to be moot since plaintiff's right of action had been abolished.

Consequently, if plaintiffs are to establish liability on the part of the defendants, it must be based on a theory of common law negligence.

■ *Hall v. Budagher, supra,* and *Cole v. Rush, supra,* are representative of the general rule at common law which is:

> [I]t is not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and it has been frequently held that, in the absence of statute, there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. The reason usually given for this rule is that the drinking of the liquor is the proximate cause of the injury, not the furnishing of it.

(Footnotes omitted.) 30 Am. Jur. *Intoxicating Liquors* § 520 (1958).

> It is generally held that there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished, even though the liquor was sold or given to one in violation of a law other than under a civil damage act, so long as the person to whom the liquor was sold or given was not in such a state of helplessness or debauchery as to be deprived of his will power or responsibility for his behavior.

(Footnotes omitted.) 30 Am. Jur. *Intoxicating Liquors* § 521 (1958).

The rationale of a majority of the courts reviewing this issue is typified by the language of the Maryland Supreme Court:

> [T]he common law knows no right of action against a seller of intoxicating liquors, as such, for "causing" intoxication of the person whose negligent or wilful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor.

*State, Use of Joyce v. Hatfield,* 197 Md. 249, 254, 78 A.2d 754 (1951).

Such rationale also applies to the donor who gives intoxi-

cating liquor to an ordinary able-bodied man. *See* 75 A.L.R.2d 833 (1961), and cases cited therein.

The cases supporting the general common law rule hold that the sale of furnishing of the intoxicant is not the proximate cause of the injury as a matter of law; whereas, courts which have departed from that strict rule have said that the causal connection and the foreseeability element, both of which must be established before liability attaches, are questions of fact for the trier of the facts. *E.g., see Ramsey v. Anctil,* 106 N.H. 375, 211 A.2d 900 (1965); *Waynick v. Chicago's Last Dep't Store,* 269 F.2d 322 (7th Cir. 1959); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821 (1959).

Plaintiffs draw our attention to *Brockett v. Kitchen Boyd Motor Co.,* 264 Cal. App. 2d 69, 70 Cal. Rptr. 136 (1968), in which the California Court of Appeals held an employer liable for damages to third persons who were injured in an automobile accident caused by an employee of the defendant, after the employee had become intoxicated at a Christmas party given by the defendant. In that case, the court recognized the general common law rule stated above, but found that there was a special relationship between the employer and employee; that the employer had *directed* the drunken *minor* employee to his car; and *instructed* him to drive home. Thus the employer had, in effect, placed himself in a position of accepting responsibility and was in control of the situation. Liability was found on the basis that the employer had actually induced the improper operation of the automobile. We find no such relationship or control in the instant case.

Plaintiffs state in their brief that they have no quarrel with these common law rules, but contend that Mr. Wolf was not an "ordinary able-bodied man." They assert that the defendants knew Mr. Wolf had a drinking problem; that he, therefore, was not a strong and able-bodied man and was incapable of voluntarily resisting becoming intoxicated.

We do not think that these allegations create the distinction suggested by plaintiffs. Mr. Wolf is not a person under

legal disability nor has he been interdicted under RCW 71.08. There may be good reason to place the licensed vendor of liquors under a burden suggested by plaintiffs, but we need not consider such a possibility in this case. Here we have a social event involving many people where liquor is available, but not sold in the sense of an individual order or procurement to or from a person in a position to adjudge the physical condition of each guest. This difference between commercial vending of intoxicants and the social or quasi-social furnishing of liquor is aptly recognized in *Rappaport v. Nichols, supra,* at 205:

> We are fully mindful that policy considerations and the balancing of the conflicting interests are the truly vital factors in the molding and application of the common law principles of negligence and proximate causation. But we are convinced that recognition of the plaintiff's claim will afford a fairer measure of justice to innocent third parties whose injuries are brought about by the unlawful and negligent sale of alcoholic beverages to minors and intoxicated persons, will strengthen and give greater force to the enlightened statutory and regulatory precautions against such sales and their frightening consequences, and will not place any unjustifiable burdens upon defendants who can always discharge their civil responsibilities by the exercise of due care. It must be borne in mind that the plaintiff's complaint has no relation to service by persons not engaged in the liquor business or to lawful sales and service by liquor licensees, or to sales by reasonably prudent licensees who do not know or have reason to believe that the patron is a minor or is intoxicated when served; the allegations of the complaint are expressly confined to tavern keepers' sales and service which are unlawful and negligent. Liquor licensees, who operate their businesses by way of privilege rather than as of right, have long been under strict obligation not to serve minors and intoxicated persons and if, as is likely, the result we have reached in the conscientious exercise of our traditional judicial function substantially increases their diligence in honoring that obligation then the public interest will indeed be very well served.

Each of the cases noted earlier as departing from the common law rule involved a sale of liquor by a regular

vendor. Defendants' activities did not constitute a sale of liquor even by the broadest concept. We have been unable to find any case wherein liability has been predicated upon a gift of intoxicants.

It may be that the social and economic consequences of "mixing gasoline and liquor" should lead to a rule of accountability by those who furnish intoxicants to one who becomes a tort-feasor by reason of intoxication, but such a policy decision should be made by the legislature after full investigation, debate and examination of the relative merits of the conflicting positions. *Accord, Hamm v. Carson City Nugget, Inc.,* —— Nev. ——, 450 P.2d 358 (1969). *Also see Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965). The legislature has provided for civil liability of a person furnishing intoxicants to one who has been adjudged an habitual drunkard. RCW 71.08.080. We do not believe that we should judicially extend this legislative act.

We agree with the trial court that the plaintiffs have no claim upon which relief can be granted.

Judgment affirmed.

HUNTER, C. J., WEAVER, HALE, and McGOVERN, JJ., concur.

FINLEY, J. (dissenting)—The majority concludes that a cause of action such as plaintiff's was unknown to the common law, that consequently a common law action cannot be entertained by the courts today, and that the repeal of the Dramshop Act has destroyed plaintiff's right of action. I cannot agree. The first conclusion is correct as a matter of historical interest. However, the freeway, the high-compression gasoline engine, and the high-speed automobile were also unknown to the common law. So were the social dangers resulting from the lackadaisical mixture of alcohol and gasoline. Times change, and the common law changes with the times—slowly, perhaps, but quite surely—as historical perspective clearly demonstrates. *See* K. Llewellyn, The Common Law Tradition (1960).

The remedy of the Dramshop Act was extended to persons injured by "any intoxicated person, or in conse-

quence of the intoxication, habitual or otherwise, of any person . . ." RCW 4.24.100 (repealed Laws of 1955, ch. 372, § 1). Plaintiff seeks to establish liability upon the ground of injury flowing from the giving of drinks in an excessive amount to a known alcoholic at an office party. The most cursory reading of the repealed statute establishes that the liability which it created was so much broader and more inclusive than that contended for by the plaintiff that no conclusion whatever in relation to the instant case should be drawn from the repeal of the Dramshop Act.

*Hansen v. West Coast Wholesale Drug Co.,* 47 Wn.2d 825, 289 P.2d 718 (1955), does not indicate that the plaintiff made allegations of alcoholism or previous knowledge of a revocation of driver's license. It may be cited as judicial recognition of the proposition that the statutory right of action was retrospectively abolished; it is not authority for the proposition that the legislature by repealing the statute sought to destroy any previously existing or inchoate common law right of action.

It is also impossible to state with certainty that the liability accruing under RCW 71.08.080 was in any sense intended as a substitute for the Dramshop Act. When the legislature seeks to destroy a common law right of action, it generally does so explicitly. *See, e.g.,* RCW 51.04.010. In my opinion, the majority has drawn extremely dubious conclusions as to public policy from a most insubstantial legislative history.

The remedy to which the majority would restrict the plaintiff is RCW 71.08.080—which dates from the territorial period. A catalogue of the major achievements in reconciliation of the common law to changed social conditions since statehood would be a futile exercise; but the common law is not an unchanging compendium of desiccated maxims. Nor is the field of tort law one in which the courts should always defer to the legislature. *See* Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law,* 48 Minn. L. Rev. 265 (1963).

Even the majority's assertion that at common law there

was no right of action for supplying alcohol to a person under the circumstances of this case is not strictly accurate. First, there were no automobiles "at common law" capable of transformation by an inebriate from a useful mechanism into an engine of violence and destruction. More importantly, the common law recognized a right of recovery for the provision of habit-forming drugs to a known user. Such sales were the basis of actions for the loss of services, support, and consortium. *See* Annot., 130 A.L.R. 352 (1941). The sale of liquor to an alcoholic has been, at common law, held within the rationale of the habit-forming drug cases. *Id.,* at 357-59. An action for the wrongful death of a slave through provision of alcohol—injury to property—has been sustained at common law. *Id.,* at 366. Actions by third parties for personal injuries so occasioned have also been sustained at common law. *Id.,* at 367.

It is correct that most courts, at common law, confronted with a third party suit for personal injuries flowing from provision of alcohol to able-bodied men in the days prior to the modern automobile, held that the provision of alcohol was not the proximate cause of injury. Such reasoning is far more persuasive when a drunkard is annoying or assaulting a passerby, riding a horse, or driving his carriage through the village street at the breathtaking speed of 10 to 15 miles per hour, than when an inebriate is in incompetent control of a 2-ton metal juggernaut powered by three hundred horsepower.

Adaptation of the law of torts to the myriad risk-creating agencies and devices of modern society requires continuous application of easily understood basic principles to a plethora of divergent and continually emerging factual combinations. The task is singularly suited to the judicial process and in the grand tradition of the common law. *See* Llewellyn, *supra*. The resolution of the problems involved would be a task requiring impracticable prodigies of legislative effort. Furthermore, it is almost a rule-of-thumb—worthy of judicial notice—that the legislative branch usually reacts only to organized vocal public interest. There is no such

organized vocal interest or effort on the part of the socially significant number of miscellaneous persons injured today through the drunkenness of a socially significant number of motor vehicle operators.

I must say that judicial cognizance of, and functioning within, the great common law tradition can hardly be characterized as judicial legislation except through naivete as to legal history. If each change in society occasioned by technological and other developments involving potential negligent harm to individuals requires legislation before tort liability results, justice would have been and would continue to be unnecessarily illusory in too many instances.

Legislation is not required and never has been. The instant case is one peculiarly suited to the judicial process. The ever-growing carnage on our highways is notorious. So is the relation between drunken driving and accidents. Plaintiff has alleged a clear and compelling factual case for foreseeable negligent harm, and this lawsuit is in that posture where inferences drawn from the allegations must be those most favorable to the plaintiff.

It requires no legislative fact-finding to establish that risk-creating conduct existed on the facts alleged. Legislative inaction is not proof of inexorable social or public policy. That the legislature has not forbidden provision of alcohol for business purposes to known alcoholics who may reasonably be expected to leave the scene in their personal automobiles is not a barrier to judicial determination of liability. If that determination is consistent with the analytic framework of the law of torts, it is legitimate and should be effectuated modernly in this appellate court.

Such a judicial determination is by no means unprecedented. A common law action for provision of alcohol has been held to exist for sale to a visibly intoxicated person, and resultant personal injury. *See* Annot. 75 A.L.R.2d 833 (1961). It would appear that in this, as in many areas, the common law is in the process of reconciling itself through judicial reasoning to our modern society.

The general rationale of those cases holding that the sale or furnishing of liquor to an able-bodied man does not produce liability in tort for resulting injury is that the furnishing of liquor is not the *proximate cause* of the injury. Translating that archaic analysis into the tort theory presently applied in this court, *see, e.g., Rikstad v. Holmberg,* 76 Wn.2d 265, 456 P.2d 355 (1969), the court should inquire if the risk created by the act of provision of liquor to a known alcoholic whose driver's license has been previously revoked, at an office party at which he could reasonably be believed to have arrived by use of his personal auto, and from which he could be reasonably expected to depart in the same manner, creates an unreasonable risk of harm to persons rightfully abroad on the public highway. If reasonable men could differ as to the result of the query, a jury question of negligence is presented in the absence of countervailing social policy.

It is this analysis, and not the examination of dicta going to a result not reached by the court, which should be applied to the instant facts. *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821 (1959), from which such dicta are quoted at length by the majority, holds on common law principles that sale of drink to a minor by a tavern owner creates a foreseeable risk of harm to persons on the public highways. The decision considers that the sale of drink to minors is prohibited for the protection of the general public, and that the legislature has by its prohibition of sale to minors, recognized that minors are *a class unfit to responsibly handle alcoholic beverages.*

A legislative determination that a class of persons is unfit to responsibly handle alcoholic beverages is, of course, entitled to the respect due the acts of the legislature, and to be viewed under the rules governing review of the exercise of the police power. But it does not follow from the power of the legislature to define classes of persons who are denied access to alcohol, or as to whom certain consequences will follow from a provision of alcohol, *see* RCW 71.08.080, that

the courts are foreclosed from an exercise of their own responsibility for the maintenance of tort law.

The substance of the issue before this court is whether the common law right of action for negligence should be abridged by a judicially created barrier to recovery. It should be clear to any responsible citizen that automobile accidents of the sort upon which this suit is brought are the foreseeable result of furnishing drink to alcoholic drivers, if not perhaps the foreseeable result of furnishing excessive drink to anyone driving a high-powered modern automobile on a public thoroughfare. The majority's denial of liability is based on its own reasoning as to social policy, which I believe is unnecessarily limited.

There are three factors upon which a limiting social policy could reasonably be founded. One is that there was no sale in this case; a second is that this case does not involve a licensee of the liquor control board; the third is that there should be no liability for the furnishing of alcoholic beverages to even such persons as this defendant in a purely *social* context.

The first factor I do not find convincing. Suppose that A buys B's drink at the cocktail lounge. Does this, should this, insulate the owner from liability if B is obviously roaring drunk when he leaves? Cf. RCW 66.44.230; WAC 314-16-150 (forbidding retail liquor licensees to "give or supply" liquor to intoxicated persons).

A second factor for consideration is whether the case involves a retail licensee of the liquor control board. At first blush this is an attractive distinction. Those who are licensed to sell at retail extract a profit from their sales—surely they can be required to bear the cost of the trade in mangled bodies. They hold a valuable privilege; regulation of their conduct is detailed; and the state interest is obvious. But, it is not only the retail licensee who reaps benefit from a furnishing of alcohol. We must ignore the realities of life in the twentieth century if we assume that

business benefit is somehow coextensive only with sale for profit.

The business-firm defendant in this lawsuit had for three years deducted the costs of these Christmas parties—these "social" events—as a business expense for federal tax purposes. That action only confirms what it is obviously within the province of the jury to find—namely that the firm considered the Christmas party as a source of employee goodwill and hence that the party was held for a business purpose.

The third factor is more persuasive. A business may, if it considers the provision of alcohol for business purposes essential to its operations, insure itself and spread the risk of its conduct. An individual is both less likely to be aware of the possible liability and unable to pass the cost along as part of the overhead to the ultimate consumer. The business reality of such provision of alcohol is recognized in article 8, section 8 of the state constitution, adopted in 1966 as the 45th amendment, and permitting promotional hosting by port districts as a public use for a public purpose. Such expenditures are also recognized as legitimate business deductions in the internal revenue code.

If the third factor is relevant, then there should be no liability if this was a genuine social gathering, but liability should attach if the so-called social gathering in the instant case was for a business purpose. The food and drink in the instant case were furnished by the employers; the party was held upon their premises. Attendance was not required of employees, but it seems a warranted inference from the facts alleged that the employers could expect rewards in good will and employee relations from the party. Accordingly, I believe that a question of fact was presented on this issue.

If the plaintiff can establish the fact issues relative to alcoholism and business purpose, I am of the opinion that he has a good common law action for negligent conduct on the part of the employers. He is entitled to attempt to make

his proof. I must therefore dissent from the majority's attempt to close the doors of justice.

HILL, ROSELLINI, and HAMILTON, JJ., concur with FINLEY, J.

---

December 8, 1969. Petition for rehearing denied.