[No. 26671-3-I.   Division One.   August 19, 1991.]

ALICE E. DICKERSON, *as Guardian, Respondent,* v. CHADWELL, INC., *Appellant.*

*Thomas J. Collins, Judith W. Constans* and *Merrick, Hofstedt & Lindsey,* for appellant.

*John L. Messina, Stephen L. Bulzomi, Virginia L. DeCosta,* and *Messina Duffy,* for respondent.

AGID, J. — Chadwell, Inc., appeals an order granting a new trial because of a prejudicial error of law in admitting evidence. It contends that the evidence was properly admitted and was not prejudicial, and that plaintiff waived review of the evidentiary ruling. We affirm.

John Dickerson was severely injured and rendered incompetent in an incident that began inside the Six-Eleven Tavern and ended on the sidewalk in front of the tavern. Through his guardian, Dickerson brought a negligence action against Chadwell, the Six-Eleven's corporate owner. Dickerson alleged that Chadwell negligently over-served one of the other Six-Eleven patrons involved in the incident and failed to exercise reasonable caution to protect him from foreseeable injury.

Testimony at trial differed sharply about the events which preceded Dickerson's injury. Dickerson's girl friend,

Lynda Moore, testified that she and Dickerson went to the Six-Eleven during happy hour and encountered several people with whom they were acquainted. One of these people, "Little Mike" Reyes, was "obnoxious", "rude", "belligerent", "pushy" and "mean" when Moore and Dickerson arrived. Reyes also talked loudly and his speech was slurred. Despite Reyes' behavior, Six-Eleven personnel allowed Dickerson, Moore, Reyes and approximately 5 to 7 other people to pool their money before happy hour ended and purchase 80 beers. In a process called "stacking", the drinks were served together so that the tables at which the group sat were "covered with beers." Over the next 2 hours Reyes continued to drink and, according to Moore, became more obnoxious. Moore asked the bartender to get Reyes away from their table, but he did little to assist her.

Under Moore's version of events, the incident began when Reyes took offense at an insulting comment Dickerson jokingly made to another member of the group. Reyes pushed Dickerson from his chair and, when Dickerson resumed his seat, continued to walk back and forth behind him. Dickerson eventually pushed his chair out to get up and accidentally bumped Reyes. Reyes hit Dickerson, who fell over a railing. Several people began pushing, shoving, yelling and screaming. A Six-Eleven employee told the group to "Take it outside." Dickerson was pushed outside, where Reyes and his companion fought with him until Dickerson "was knocked out on his feet" and fell straight back onto the sidewalk.

Witnesses for Chadwell described a much different scenario. Their testimony was that Dickerson slapped Moore at least two times and that these acts caused a commotion.[1] Tavern personnel told Dickerson to leave, and a waiter and one or two other patrons walked Dickerson out the door. While outside, Dickerson became involved in an argument with others who had left the

---

[1] Although Moore admitted that she and Dickerson had a disagreement while at the Six-Eleven, she testified that Dickerson had not slapped her.

tavern at about the same time. The next thing anyone knew, Dickerson was lying on the ground.

The jury entered a special verdict that Chadwell was not negligent. Dickerson moved for a new trial on the ground that the trial court committed an error of law by allowing inadmissible, prejudicial evidence. The trial court granted Dickerson's motion. Chadwell appeals.

## NEW TRIAL

■ A trial court may grant a new trial for an "[e]rror in law occurring at the trial and objected to at the time by the party making the application". CR 59(a)(8). To be grounds for a new trial, the error of law complained of must be prejudicial. *E.g.*, *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 533, 554 P.2d 1041 (1976). The trial court here concluded that these requirements were satisfied by an error it committed in ruling that evidence that Dickerson had slapped Moore on two occasions prior to the night of his injury was admissible.

Dickerson had moved before trial to exclude evidence of the prior slapping incidents. He argued that the evidence was character evidence inadmissible under ER 404(b).[2] Chadwell countered that the evidence was admissible to rebut Dickerson's evidence of his nonaggressive, "laid-back" character. The trial court denied Dickerson's motion and also rejected Chadwell's argument. It ruled that the evidence was admissible under ER 401 and ER 403 "for the purposes of tending to show whether or not [Dickerson] did slap [Moore]" on the night of the incident, but not as character evidence within the meaning of ER 404(b).

To limit the prejudicial impact of the prior slapping incidents, Dickerson introduced the evidence during direct examination of Moore:

[2]ER 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Q: Had he ever struck you in the past?
A: Yes.
Q: On how many occasions?
A: Twice.
Q: Over arguments?
A: Over — I was smart-mouthed to him once and he slapped me, slapped me in the face.
Q: And how about the other time?
A: The other time was an argument. It was an argument.
Q: But on the occasion in question?
A: He would never have hit me in public.

There is no other reference to Moore's slapping testimony in the partial record before this court.

On appeal, Chadwell concedes that the trial court's stated basis for admitting the prior slapping evidence was improper,[3] but contends that this error does not require a new trial. Chadwell argues that Dickerson waived the right to assert the error by introducing the evidence on direct, the evidence was admissible to rebut Dickerson's character evidence, and admission of the evidence did not prejudice Dickerson.

■ Chadwell's first contention is without merit. Washington courts have repeatedly held that a party prejudiced by an evidentiary ruling who then introduces the adverse evidence in an effort to mitigate its prejudicial effect is not precluded from obtaining review of the ruling. *State v. Whelchel*, 115 Wn.2d 708, 727-28, 801 P.2d 948 (1990) (not invited error for defendant to refer in opening remarks to evidence expected to be admitted at trial under an erroneous pretrial ruling); *State v. Watkins*, 61 Wn. App. 552, 811 P.2d 953 (1991) (no waiver when defendant testifies

---

[3]Chadwell's concession is properly made. Although the trial court here purported to disallow use of the disputed testimony to establish Dickerson's character, the effect of its ruling was to allow the prior slapping incidents to be used to show Dickerson's propensity for slapping Moore and to thereby prove that it was more likely that he slapped Moore during the incident in question. ER 404(b) prohibits use of prior bad acts for this purpose. The fact that the court found the evidence admissible under ER 401 and 403 is irrelevant. Relevance and prejudice determinations must be made in addition to an evaluation under ER 404(b) of whether the purpose for which the evidence is admitted is proper. ER 401 and 403 determinations may not supplant the ER 404(b) inquiry.

on direct about a prior conviction when trial court erroneously ruled that State could elicit testimony about that conviction during cross examination); *Garcia v. Providence Med. Ctr.*, 60 Wn. App. 635, 641, 806 P.2d 766 (1991) (party may try to minimize adverse effect of an evidentiary ruling by introducing the damaging testimony without waiving review of the issue). We see no reason not to apply this rule to situations in which a new trial, rather than appellate review, is sought by the aggrieved party.

Chadwell acknowledges this rule, but argues that it should not apply to the instant case because, after the court's ruling, its attorneys decided not to elicit testimony from Moore about the prior slapping incidents. Consequently, Chadwell argues, Dickerson alone is responsible for the error about which he now complains. Chadwell makes a valid point. In many cases an attorney who has obtained a questionable ruling admitting certain evidence may subsequently decide not to introduce that evidence in order to avoid creating an appealable issue. Additionally, a trial judge may, on further reflection, reconsider his or her decision to admit certain evidence. Consequently, we limit the no-waiver rule of *Whelchel*, *Watkins* and *Garcia* to those cases in which the trial court has made a final and unequivocal ruling on the motion in limine, and the record contains no indication that the party in whose favor the trial court ruled subsequently decided not to introduce the disputed evidence. *See generally Whelchel*, 115 Wn.2d at 728 (supporting no-waiver holding with observation that the State had argued vigorously in support of admitting the evidence and given no indication that it did not intend to use it).

Unfortunately for Chadwell, this limitation does not affect the instant case. The trial court's ruling allowing the evidence was clearly final, and the record before this court contains nothing supporting Chadwell's assertion that it decided not to introduce the evidence as part of its case. Accordingly, we must reject Chadwell's assertion

that Dickerson waived any error related to admission of this evidence.

Chadwell alternatively contends that although the trial court relied on an improper reason for admitting the evidence, it committed no error because the evidence would have been properly admitted as rebuttal character evidence. Under ER 404 and 405, "evidence of character is admissible in a civil case only if the person's character is actually in issue." R. Aronson, *Evidence in Washington* 404-2 (1989). Chadwell argues that this requirement is met by two items of testimony: (1) Moore's statement that Dickerson "had never been in a fight that I know of "; and (2) her assertion that Dickerson would not have hit her in public. As support for its claim that this is sufficient to put Dickerson's character into issue, Chadwell relies on *Maicke v. RDH, Inc.*, 37 Wn. App. 750, 683 P.2d 227, *review denied*, 102 Wn.2d 1014 (1984).

We disagree with Chadwell's contentions. First, Moore's testimony is hardly sufficient to put Dickerson's character into issue in any meaningful way. Second, *Maicke* is distinguishable. Plaintiff's evidence concerning the victim's character in that case was far more extensive than the purported character evidence to which Chadwell has drawn the court's attention. *See* 37 Wn. App. at 753. Third, even if Moore's testimony somehow did raise an issue about Dickerson's character, it only put into issue that aspect of his character which concerned his lack of any propensity for fighting and picking fights. The fact that Dickerson had previously slapped Moore in private does not rebut allegations concerning that aspect of his character.

Chadwell's final argument in opposition to the order granting a new trial is that even if the trial court erred in admitting the prior slapping evidence and that error has not been waived, a new trial is unnecessary because the error did not prejudice Dickerson. Again, we disagree.

Although a trial court's decision that it made an error of law is reviewed de novo, *e.g.*, *Lyster v. Metzger*, 68

Wn.2d 216, 226, 412 P.2d 340 (1966), its decision that the error was prejudicial is reviewed under a more generous standard. When a trial court evaluates occurrences during trial and their impact on the jury, great deference is afforded the trial court's decision. *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 226, 562 P.2d 1276, *review denied*, 89 Wn.2d 1010 (1977); *see also Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 437, 397 P.2d 857 (1964).

Based on the partial record before this court, we uphold the trial court's determination of prejudice. A central issue at trial concerned how the altercation that resulted in Dickerson's injuries commenced. According to Dickerson's witnesses, primarily Moore, it was the Six-Eleven's negligence in overserving Reyes and in failing to take steps to prevent Reyes from continuing to harass Dickerson that led to the fight on the sidewalk outside the tavern. Moore also asserted that Dickerson had not slapped her on the night in question. According to Chadwell's witnesses, however, the commotion caused by Dickerson slapping Moore led to Dickerson's banishment from the tavern. Only after Dickerson was outside, Chadwell's witnesses testified, did he become involved in a dispute with people other than Moore.

■ Moore's admission that Dickerson had previously slapped her lent considerable credence to Chadwell's version of events, while it detracted from the credibility of her own story. It may well have significantly prejudiced Dickerson's case. We uphold the trial court's determination that Moore's testimony about the prior slapping incidents probably affected the outcome of trial and was, therefore, prejudicial. *See generally State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (erroneous ER 404 ruling is reversible error if, within reasonable probabilities, the error materially affected the outcome of trial).

In sum, the trial court's ruling that it committed an error of law in admitting evidence about the prior slapping incidents is correct. The error is properly before this court. Because it is reasonably probable that the error

affected the outcome of trial, the trial court's order granting a new trial is affirmed.

### INSTRUCTIONAL ERROR

Chadwell also asks the court to consider assignments of error addressing issues that will arise on remand. We address these issues briefly.

The first issue is whether the trial court erred in instructing the jury that tavern employees have a duty not to serve alcoholic beverages to an *apparently intoxicated* person. Chadwell argues that a proper instruction would state that tavern employees have a duty not to serve alcoholic beverages to an *obviously intoxicated* person.

■ In Washington, a commercial establishment's liability for overservice of alcoholic beverages derives from common law. The duty such establishments owe is consistently described as a duty not to serve alcohol to "obviously intoxicated" persons. *E.g.*, *Christen v. Lee*, 113 Wn.2d 479, 488, 780 P.2d 1307 (1989); *Purchase v. Meyer*, 108 Wn.2d 220, 225, 737 P.2d 661 (1987); *Wilson v. Steinbach*, 98 Wn.2d 434, 438, 656 P.2d 1030 (1982); *Hansen v. Friend*, 59 Wn. App. 236, 241-42, 797 P.2d 521 (1990), *review granted*, 116 Wn.2d 1007 (1991); *Williams v. Kingston Inn, Inc.*, 58 Wn. App. 348, 352-53, 792 P.2d 1282 (1990). This duty is a limited exception to the general rule that it is not a tort to sell alcohol to "ordinary able-bodied men" on the theory that it is the drinking of the alcohol that is the proximate cause of any injury, not the furnishing of it. *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 762, 458 P.2d 897 (1969) (quoting 30 Am. Jur. *Intoxicating Liquors* § 520 (1958)). Only when a commercial establishment furnishes liquor to one "in such a state of helplessness or debauchery as to be deprived of his will power or responsibility for his behavior", *Halvorson*, 76 Wn.2d at 762 (quoting 30 Am. Jur., *supra* § 521), does applicability of this proximate cause rationale cease.

The apparently intoxicated standard that the trial court used here is statutory in origin. The Washington

State liquor act provides that "[n]o person shall sell any liquor to any person *apparently under the influence* of liquor." (Italics ours.) RCW 66.44.200. The purpose of this provision is to protect against foreseeable hazards resulting from service to an intoxicated person. *Christen*, 113 Wn.2d at 503. The general field of danger with which the statute is concerned is driver error. *Christen*, 113 Wn.2d at 503. The statute is not, however, intended to serve as an alternative means by which those assaulted by an intoxicated person can impose civil liability upon the sellers of alcoholic beverages. *Christen*, 113 Wn.2d at 503. Thus, the statute and the standard of care it imposes are inapplicable here.

Although the difference between an obviously intoxicated standard and an apparently intoxicated standard may be slight, it was error for the trial court to instruct the jury on the less stringent apparently intoxicated standard.[4] In doing so, the trial court deviated from the well-established common law definition of the duty imposed on a commercial alcohol establishment. Consequently, on remand the court should only instruct the jury in terms of service to an "obviously intoxicated" person.

## EXPERT TESTIMONY

We last address Chadwell's contention that the trial court erred in allowing a liquor control agent to give expert testimony on overservice and stacking. The agent, David Scearce, testified that overservice is a term with a special meaning in the liquor industry, namely, selling alcohol to an apparently intoxicated person. He said that to be apparently intoxicated under the liquor law, one need not be "dead drunk", but need only be "starting to show some signs of intoxication". Scearce also discussed

---

[4]Webster defines obvious as "easily understood" and as "requiring very little insight or reflection to perceive, recognize, or comprehend". *Webster's Third New International Dictionary* 1559 (1971). In contrast, something that is apparent is commonly understood as being *capable* of easy perception. *Webster's*, at 102-03. Thus, unlike the determination of something obvious, determination of something apparent requires at least some reflection and thought.

stacking. He explained that stacking is when one or more customers have a lot of nonconsumed drinks on the table, and that this usually happens when customers purchase several drinks while prices are low. According to Scearce, the liquor control board discourages stacking because it increases the likelihood of overservice.

On appeal, Chadwell argues that Scearce's testimony was improperly admitted because it was not based on an explanatory theory generally accepted in the scientific community.[5] *See generally State v. Ciskie*, 110 Wn.2d 263, 270-71, 751 P.2d 1165 (1988) (expert testimony based on a particular scientific principle or technique is inadmissible unless the principle or technique is generally accepted). This argument fails because Scearce's testimony was not scientific testimony and consequently no showing as to its scientific validity was necessary. 5A K. Tegland, Wash. Prac., *Evidence* § 291(2) (3d ed. 1989).

■ Chadwell also asserts that the testimony was not helpful to the trier of fact. With respect to Scearce's "stacking" testimony, this assertion fails. Chadwell overlooks the rule that expert testimony which explains terms used within an industry is admissible. *State v. Strandy*, 49 Wn. App. 537, 543-44, 745 P.2d 43 (1987) (numbers used in drug transactions), *review denied*, 109 Wn.2d 1027 (1988); *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989) (narcotics trade and organized crime), *cert. denied*, 110 S. Ct. 1139 (1990). With respect to testimony about behavior evidencing "apparent intoxication", however, we agree with Chadwell that any such testimony should be excluded on remand. Because we have rejected use of apparent intoxication as a standard in this case, testimony on that standard would have little, if any, relevance and would serve only to confuse the jury. *See* ER 403 (overly confusing evidence should be excluded). Indeed, a fear of confusing the jury after Scearce's testimony about apparent intoxication was one of the

---

[5]Chadwell also argues that Scearce improperly stated an opinion that the tavern employees were negligent. This assertion is not supported by the record.

grounds on which the trial court refused to give an obvious intoxication instruction.

The order granting a new trial is affirmed. On remand, the jury instructions and expert testimony should address the applicable duty in terms of obvious intoxication rather than apparent intoxication.

COLEMAN and FORREST, JJ., concur.

Reconsideration denied October 8, 1991.

Review denied at 118 Wn.2d 1011 (1992).