[No. 35150-1-II. Division Two. January 8, 2008.]

MICHAEL D. HOSKINS, *Appellant*, v. DEREK REICH ET AL., *Respondents*.

---

558

*Paul A. Lindenmuth* (of *Ben F. Barcus & Associates, PLLC*), for appellant.

*Elizabeth A. Jensen*, for respondents.

¶1 VAN DEREN, J. — Michael D. Hoskins appeals the judgment and jury verdict awarding him $25,095 in past economic damages, nothing in future economic damages, and $15,000 in past and future noneconomic damages for the injuries he suffered in an automobile accident caused by Derek Reich. Hoskins seeks reversal and remand for a new trial, contending that the trial court erred when it (1) admitted evidence of his preaccident chiropractic treatment and (2) denied his CR 59 motion for a new trial.

¶2 We hold that the trial court erred when it admitted evidence of asymptomatic preexisting conditions but, in this instance, the error did not prejudice the jury's verdict and was harmless. We also hold that the trial court did not err in refusing to grant a new trial under CR 59. Thus, we affirm.

## FACTS

¶3 On May 10, 2001, Reich's automobile struck Hoskins's pickup truck from behind. Hoskins sued Reich for damages, alleging neck, back, and arm injuries. Reich admitted that he was "liable for any injury or damage which was proximately caused by the" accident. Clerk's Papers (CP) at 120.

¶4 On May 11, 2001, Hoskins sought treatment from his chiropractor, Dr. Gordon Rody, who treated him regularly until August 2001. On July 23, 2001, Rody cleared Hoskins to return to work. Hoskins saw Rody a final time in February 2002, when Rody told him that his neck and shoulder pain was not from "an accident-related injury." CP at 343. Nineteen months later, Hoskins saw a family practitioner, Dr. Lowell Finkelman. He consulted Finkelman from September 11, 2003, through April 2004. He told

Finkelman that his chiropractic visits had not been helpful, and he complained of neck, back, and arm pain. Finkelman referred Hoskins to a neurosurgeon, Dr. Richard Wohns,[1] in May 2004.

¶5 Before trial, Hoskins moved to exclude "all references to [his] asymptomatic, pre-existing [medical] conditions." CP at 10. Hoskins later renewed his motion to exclude this information because

> [Reich] clearly desire[d] to introduce evidence of [Hoskins]'s prior efforts at seeking medical treatment for conditions that were similar but not the same as or which were asymptomatic since the subject accident. Such efforts to confuse the jury and to invite speculation, should be precluded as being irrelevant pursuant to ER 402, ER 403,[2] and the [*Harris v. Drake*, 152 Wn.2d 480, 99 P.3d 872 (2004)] decision.

CP at 12. Hoskins argued his motion to exclude at the beginning of the jury trial, and the trial court reserved ruling on the issue and admonished the parties not to mention any preexisting medical conditions until it could consider an offer of proof in the form of expert testimony outside the jury's presence.

¶6 Rody testified to his treatment of Hoskins after the May 10 collision and, on cross-examination, Reich made an offer of proof outside the presence of the jury. Reich asked the trial court to allow Rody to testify about Hoskins's preaccident chiropractic treatment. When the trial court asked about the relevance of such evidence, Reich responded, "I want to be able to show the jury . . . that there was [a prior] injury, that [Rody] worked on [Hoskins],

---

[1] Dr. Lowell Finkelman and Dr. Richard Wohns testified by videotape deposition taken on November 9, 2005, and September 28, 2005, respectively.

[2] ER 402 states that "[a]ll relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible."

ER 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

got him down to sporadic treatments, and then there wasn't very much, and then you get something new." CP at 346.

¶7 During the offer of proof, Rody testified that on October 20, 2000, Hoskins complained of right arm numbness and a weak grip and that on November 13, 2000, six months before the accident, Hoskins had complained of neck pain. When asked by the trial court whether a doctor was going to testify that preexisting conditions were "lighted up" by the accident, Reich's attorney responded in the negative and argued that Hoskins "was not a perfect clean slate when he got in this accident of May 10th, 2001. And the fact that he had the prior condition and treatment is relevant to his current injury." CP at 364. Reich admitted that "there's no information that [Hoskins] was having difficulties in the weeks and months immediately before this accident, but he did have a physical condition." CP at 378. Hoskins responded that the "fact that he had previous chiropractic treatment does not establish any particularized preexisting condition." CP at 378.

¶8 Over Hoskins's objection, the trial court ruled that the evidence was admissible and denied Hoskins's immediate motion for a mistrial. But in response to Hoskins's further argument that the danger of prejudice outweighed the probative value of such evidence, the trial court excluded any evidence of prior accidents. Hoskins also made a continuing objection to the admission of any preaccident treatment evidence.

¶9 On further cross-examination, and over Hoskins's continuing objection, Rody testified about Hoskins's preaccident chiropractic treatment, beginning with x-rays in 1998 until November 2000. On redirect, Rody acknowledged that by the time he completed Hoskins's treatment, some six months before the accident, Hoskins was no longer suffering any symptoms. Rody indicated that when Hoskins received treatment after the accident, he looked at the 1998 x-rays to help determine whether the accident injuries were new.

¶10 Finkelman testified that Hoskins did not have preaccident "chronic pain syndrome." Dep. of Finkelman at 41.[3] Finkelman repeatedly stated that Hoskins had preexisting carpal tunnel syndrome that the accident "lit up." Dep. of Finkelman at 13. Wohns testified that Hoskins was not experiencing pain before the accident. Both Finkelman and Wohns recommended "[c]ervical fusion surgery" for Hoskins's neck area. Dep. of Finkelman at 21.

¶11 Dr. Robert Colfelt, a defense expert, stated that he consulted, among other things, Rody's records, including preaccident reports and the 1998 x-ray, and Finkelman's and Wohns's records and deposition testimony to use as a basis for his opinion that Hoskins's accident injuries had resolved by August 2001, and that treatment after that date was not related to those injuries. Colfelt also testified that any future work loss would not be related to the accident and that Hoskins's carpel tunnel syndrome resulted from repetitive use of his hands and wrists and that the accident did not "light up a dormant carpal tunnel syndrome." CP at 440. Finally, Colfelt stated that, regardless of causation, he did not agree that Hoskins needed the neck surgery Finkelman and Wohns recommended.

¶12 Both Hoskins and Reich proposed instruction 9, taken from 6 *Washington Practice: Washington Pattern Jury Instructions: Civil* 30.18, at 311 (5th ed. 2005) (WPI), which the trial court gave. The instruction states:

> If you find that:
>
> (1) before this occurrence the plaintiff had a bodily condition that was not causing pain or disability; and
>
> (2) because of this occurrence the pre-existing condition was lighted up or made active,
>
> then you should consider the lighting up and any other injuries that were proximately caused by the occurrence, even though those injuries, due to the pre-existing condition, may have been

---

[3] This trial testimony is from the transcript of the videotaped perpetuation deposition of Lowell Finkelman, dated November 9, 2005.

greater than those that would have been incurred under the same circumstances by a person without that condition.

There may be no recovery, however, for any injuries or disabilities that would have resulted from natural progression of the pre-existing condition even without this occurrence.

CP at 162. The trial court also gave the following instruction on damages:

It is the duty of the court to instruct you as to the measure of damages.

You must determine the amount of money that will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the negligence of the defendant.

Your verdict must include the following undisputed items:

| | |
|---|---|
| Pierce County Fire District 6 | $379.00 |
| Good Samaritan Hospital | $654.50 |
| Puyallup Tribal Health Authority | $446.90 |
| Rody Chiropractic Clinic | $1,670.58 |
| Total | $3,150.98 |

In addition, you should consider the following past economic damages elements: the reasonable value of necessary medical care, treatment, and services received to the present time, the reasonable value of earnings, earning capacity, business opportunities, earning opportunities lost to the present time, and the reasonable value of necessary non-medical expenses that have been required to the present time.

In addition, you should consider the following future economic damages elements: the reasonable value of necessary medical care, treatment, and services with reasonable probability to be required in the future, the reasonable value of earnings, earning capacity, business opportunities, earning opportunities, with reasonable probability to be lost in the future, and the reasonable value of necessary nonmedical expenses that will be required with reasonable probability in the future.

In addition you should consider the following noneconomic damages elements: the nature and extent of the injuries, the

disability and loss of enjoyment of life experienced, and the pain and suffering, both mental and physical, experienced and with reasonable probability to be experienced in the future.

CP at 160-61. Neither party objected to the jury instructions.

¶13 The jury awarded Hoskins $25,095 for past economic damages, nothing for future economic damages, and $15,000 for past and future noneconomic damages. The trial court entered judgment on the jury verdict.

¶14 Hoskins unsuccessfully moved for a new trial under CR 59,[4] asserting that it was misconduct for opposing counsel to offer evidence of preaccident treatment, that the trial court's admission of such evidence was a "violation of the rule of *Harris*," CP at 178, and that the evidence of pre-accident treatment had "hopelessly prejudiced the result" in this case as evidenced by the "paltry amount of $15,000.00" for noneconomic damages. CP at 182.

¶15 Hoskins appeals.

## ANALYSIS

¶16 Hoskins contends that the trial court erred when it (1) admitted evidence of his preaccident chiropractic treatment and (2) denied his CR 59 motion for a new trial.[5]

---

[4] Hoskins cited the following provisions of CR 59(a) as applicable grounds for a new trial:

"**(2) Misconduct of prevailing party or jury. . .** ;

"(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;

"(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;

"**(8) Error in law occurring at the trial and objected to at the time by the party making the application; or**

"(9) That substantial justice has not been done." (Emphasis added).

CP at 185 (quoting CR 59(a)).

[5] Hoskins also assigns error to the trial court's denial of his motion for a mistrial based on the admission of the preaccident evidence. Because Hoskins fails to provide any argument or support for his assignment of error for failure to grant his motion for a mistrial, we decline to address it. *See* RAP 10.3(a)(6); *Howell v.*

## I. STANDARD OF REVIEW

 ¶17 We review the trial court's admission of evidence for an abuse of discretion. *See Hoglund v. Meeks,* 139 Wn. App. 854, 875, 170 P.3d 37 (2007). The trial court's decision to deny a motion for a new trial is also reviewed for an abuse of discretion. *See Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.,* 140 Wn.2d 517, 537, 998 P.2d 856 (2000). A trial court makes a manifestly unreasonable decision when that decision is exercised on untenable grounds or based on untenable reasons. *Mayer v. Sto Indus., Inc.,* 156 Wn.2d 677, 684, 132 P.3d 115 (2006). The trial court abuses its discretion if it relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. We review the underlying questions of law de novo. *Mayer,* 156 Wn.2d at 684.

## II. ADMISSION OF ASYMPTOMATIC PREACCIDENT TREATMENT RECORD

¶18 Hoskins, citing the Washington Supreme Court's decision in *Harris,* asserts that the trial court erred by admitting evidence of asymptomatic, preexisting conditions and that the result was a prejudiced jury. We agree that the trial court erred in admitting this evidence but conclude that the error was harmless.

¶19 Harris was rear-ended by Drake in April 1996. The next day, Harris sought emergency treatment for pain and inflammation. *Harris v. Drake,* 116 Wn. App. 261, 265, 65 P.3d 350 (2003). Over the next 20 months, Harris had problems with his left shoulder. After undergoing surgery in late 1997, based on a diagnosis of "anterior impingement syndrome," and completing postsurgical therapy in December 1997, he sued Drake in May 1998. *Harris,* 116 Wn. App. at 266.

¶20 Drake admitted liability and, over Harris's relevance objection, attempted to present evidence of Harris's

*Spokane & Inland Empire Blood Bank,* 117 Wn.2d 619, 624, 818 P.2d 1056 (1991) (assignment of error unsupported by legal argument will not be considered on appeal).

preaccident chiropractic pain complaint in February 1995, some 14 months before the accident. The trial court sustained Harris's relevance objection and ruled such evidence inadmissible. *Harris,* 116 Wn. App. at 268, 289. Although Drake presented other evidence that Harris had a bony prominence in his shoulder and that his job as a painter made him susceptible to impingements, there was no evidence of a symptomatic condition at the time of the accident. *Harris,* 116 Wn. App. at 288-90. At the conclusion of the evidence, the trial court granted Harris's motion for a directed verdict on causation.

¶21 We affirmed the trial court's evidentiary ruling, stating that

> [w]e agree with the trial court's ruling. When an accident lights up and makes active a preexisting condition that was dormant and asymptomatic immediately prior to the accident, the preexisting condition is not a proximate cause of the resulting damages. Even assuming that Harris had some sort of preexisting condition in his left shoulder, the only reasonable inference from Drake's offer of proof was that such condition was dormant and asymptomatic just prior to the accident. The offer of proof had no tendency to prove a fact of consequence to the action, and the trial court correctly ruled that it was irrelevant.

*Harris,* 116 Wn. App. at 288-89 (footnotes omitted).

¶22 We also affirmed the trial court's directed verdict because, even assuming that the evidence of a bony prominence and susceptibility to impingements "warrants an inference that Harris had a preexisting condition, it does not warrant an inference that such condition was symptomatic just prior to the accident, and thus it cannot affect causation." *Harris,* 116 Wn. App. at 290.

¶23 The Washington Supreme Court affirmed our ruling, holding that "there was no evidence of a shoulder problem prior to trial" and that "[w]hen an accident lights up and makes active a preexisting condition that was dormant and asymptomatic immediately prior to the accident, the preex-

isting condition is not a proximate cause of the resulting damages." *Harris,* 152 Wn.2d at 494.

¶24 Here, Reich admitted that Colfelt would not testify that a preexisting condition was "light[ed] up" by the accident and that "there's no information that [Hoskins] was having difficulties in the weeks and months immediately before this accident, but he did have a condition." CP at 378. Reich wanted the jury to hear evidence of Hoskins's prior treatment because Hoskins "was not a perfect clean slate when he got in this accident of May 10th, 2001. And the fact that he had the prior condition and treatment is relevant to his current injury." CP at 364. Hoskins correctly responded that the "fact that he had previous chiropractic treatment does not establish any particularized preexisting condition." CP at 378.

¶25 Reich argues that *Harris* is distinguishable on its facts and does not apply here because Hoskins's prior condition was relevant to his doctor's analysis of his accident injuries:

> Dr. Rody testified that Hoskins achieved 80% recovery after his prior episodes of back pain. He was not 100% normal at the time of the accident. Dr. Rody continued to treat Hoskins for microtraumas. He testified that because of prior injury, Hoskins' ligaments were not "as good as if you were brandnew." The ligaments were not 100% normal either. Dr. Rody testified that Hoskins had preexisting back conditions and that he needed to recognize that so he could separate out what was caused by the accident.

Br. of Resp't at 15.

¶26 But Reich had no basis to suggest that evidence of Hoskins's prior treatment was relevant to any matter at issue. Without evidence of symptoms or a preexisting condition subject to a natural progression,[6] Hoskins's prior

---

[6] The last sentence of WPI 30.18, proposed by both parties, is optional and states in part: "There may be no recovery, however, for any injuries or disabilities that would have resulted from natural progression of the pre-existing condition even without this occurrence." The notes on usage following the instruction state

treatment was not relevant to the issues of proximate cause and damages. *See Harris,* 152 Wn.2d at 494. Because (1) the evidence was unrefuted, (2) Reich admitted that Hoskins was not symptomatic before the accident, and (3) Reich failed to explain what Hoskins's "condition" was or why it was relevant to the postaccident injuries, the trial court erred in admitting Hoskins's preaccident medical history.

¶27 Also, Reich suggests that evidence of Hoskins's preaccident treatment was relevant because Colfelt "took into consideration [Hoskins's] prior record." Br. of Resp't at 11. But Colfelt's testimonial reference to Rody's 1998 preaccident treatment x-ray was brief and indicated only that the postaccident x-rays were comparable, a fact not at issue. And neither Finkelman nor Wohns referenced or relied on Hoskins's preaccident records.

¶28 Although Rody's preaccident treatment records mention right-hand numbness in 2000, which is arguably related to carpal tunnel syndrome, Hoskins was not diagnosed with carpal tunnel syndrome and those symptoms occurred six months before the accident. Furthermore, Rody testified that Hoskins's postaccident complaint of numbness in his hands was related to a spinal sprain and not carpal tunnel syndrome.

¶29 Even if the 1998 x-ray and the 2000 claim of numbness in the right hand were relevant, admission of Hoskins's entire chiropractic treatment history was error. Reich's appellate assertion, that because the entire history was relevant to Rody and Colfelt it was admissible, ignores *Harris. See Harris,* 152 Wn.2d at 494. An entire preaccident treatment record is not per se relevant or admissible merely

---

that this sentence should only be used "if the evidence would support a finding that some of the resulting injury would have resulted from natural progression of the condition even without the occurrence." 6 WPI, *supra,* at 311.

Reich offered no evidence that Hoskins's ligament damage or spinal misalignment were subject to deterioration or did in fact deteriorate due to natural progression. Only evidence showing such deterioration should survive a relevancy objection. Therefore, Reich's bare appellate assertion that these "were permanent conditions, existing before the accident," is unavailing. Br. of Resp't at 18.

because a physician consults that treatment record. Such a rule would vitiate *Harris*.

¶30 Similarly, Reich's assertion that Hoskins's prior treatment record was relevant to show "a pattern of periodically using the chiropractor prior to the accident" is likewise unsupported. Br. of Resp't at 16. The periodic use of chiropractic services before an accident, without more, does not establish proximate cause or affect damages, even if a similar pattern is repeated after the accident. Only evidence of a symptomatic condition immediately before an aggravating accident is admissible on the issue of proximate cause. *See Harris*, 152 Wn.2d at 494. And only evidence of the natural progression of a preexisting condition is relevant to damages. *See generally Bennett v. Messick*, 76 Wn.2d 474, 478, 457 P.2d 609 (1969) (asymptomatic and latent, but dormant, preexisting conditions do not affect damage awards). No fact that was of consequence to the determination of cause or damages was made more or less probable by the admission of Hoskins's entire preaccident treatment history. *See* ER 401. Thus, the trial court's admission of the preaccident treatment evidence was an abuse of discretion.

III. PREJUDICE

¶31 Because we hold that the trial court's admission of asymptomatic preaccident conditions and treatment was an abuse of discretion, we examine the record to determine whether the prejudice arising from the admission of such evidence requires a new trial.

¶32 When "there is no way to know what value the jury placed upon the improperly admitted evidence, a new trial is necessary." *Thomas v. French*, 99 Wn.2d 95, 105, 659 P.2d 1097 (1983) (error without prejudice is not grounds for reversal, and error will not be considered prejudicial unless it affects the outcome). But improper admission of evidence constitutes harmless error if the evidence is cumulative or of only minor significance in reference to the evidence as a whole. *Brown v. Spokane County Fire Prot. Dist. No. 1,* 100

Wn.2d 188, 196, 668 P.2d 571 (1983); *see also State v. Neal,* 144 Wn.2d 600, 611, 30 P.3d 1255 (2001).

¶33 Hoskins contends that proof of the prejudice arising from the improperly admitted evidence is the "paltry" award of noneconomic damages and that prejudice is the only "plausible explanation for the low general damage verdict." Br. of Appellant at 29, 30. Reich argues that, "[c]onsidering all of the evidence, the noneconomic damage award cannot be said to be so disproportionate as to indicate that it resulted from passion or prejudice." Br. of Resp't at 27.

¶34 Hoskins concedes that the jury awarded "as past economic damages almost the exact amount requested . . . for his past medical expenses" and "that based on the testimony of [Colfelt], the jury had a reasonable basis from which not to award [Hoskins] funding for the contested" neck surgery. Br. of Appellant at 29. But he contends that "[i]f, in fact, the medical treatment provided to [Hoskins] up to the date of trial was reasonable and necessary and worthy of award, then also the corresponding pain and suffering during that time period should have been properly awarded as well." Br. of Appellant at 47-48. Hoskins also admits that "there was a break in treatment that was troubling in this case," Br. of Appellant at 49, but declares that "[a]ll the affirmative proof in this case indicated that [Hoskins] suffered continuously from the date of accident to the date of trial." Br. of Appellant at 48.

¶35 But the record does not support this latter declaration. Rody testified that he cleared Hoskins to return to work July 2001 because there was no permanent impairment due to the accident, and Hoskins reported that he returned to work on July 31. Neither Finkelman nor Wohns examined Hoskins until more than two years after the accident. Wohns testified that his determination of constant pain was based on Hoskins's self-report. Moreover, the record shows that on February 5, 2002, when Rody told Hoskins that his current complaints were not accident related, Hoskins discontinued his visits to Rody and failed

to report for scheduled appointments. Colfelt testified that, in his opinion, Hoskins's accident injuries had been resolved by August 2001 and that treatment after that date was not related to the accident. And the evidence was undisputed that Hoskins did not receive treatment for his claimed accident injuries for 19 months after he last saw Rody.

¶36 When the record is viewed as a whole, the evidence of Hoskins's preaccident treatment is of minor significance and the record supports the jury's damage award. A reasonable jury could have concluded that (1) any pain Hoskins experienced after July 2001 was not related to this accident, (2) Hoskins did not need neck surgery as a result of the accident, and (3) a $15,000 award for noneconomic damages was fair. The award is within the range of damages and not so disproportionate as to indicate it resulted from passion or prejudice. *See Wooldridge v. Woolett,* 96 Wn.2d 659, 668, 638 P.2d 566 (1981) (if damages are proportionate to and within the range of evidence, "they will not be found to have been motivated by passion or prejudice"). Therefore, we decline Hoskins's invitation to interfere with that award. *See Palmer v. Jensen,* 132 Wn.2d 193, 197, 937 P.2d 597 (1997) ("Determination of the amount of damages is within the province of the jury, and courts are reluctant to interfere with a jury's damage award when fairly made."). Thus, Hoskins's assertion of prejudice is unavailing and the admission of his preaccident treatment history was harmless error and, as such, does not support a new trial.

IV. CIVIL RULE 59(a)(2), (5), (7), (8), and (9) AS GROUNDS FOR NEW TRIAL

¶37 Hoskins also argues that under CR 59: (1) Reich's counsel committed misconduct in seeking to admit the evidence, (2) the damage award was so low it indicated passion or prejudice, (3) the evidence did not justify the damage award, (4) the trial court's admission of the evidence was an error of law, and (5) substantial justice was

not done. Whether to grant a new trial on grounds of inadequate damages is within the trial court's discretion, and we will not disturb a denial of such motion "absent a manifest abuse of discretion." *Wooldridge,* 96 Wn.2d at 668.

¶38 Hoskins acknowledges that a showing of prejudice is required to support a new trial under CR 59(a)(2), (5), and (8). *See Aluminum Co. of Am.,* 140 Wn.2d at 539 (requiring that misconduct, and not mere advocacy, be prejudicial in the context of the entire record); *Wooldridge,* 96 Wn.2d at 668 ("[w]hen a verdict is so low as to unmistakably indicate passion or prejudice, a new trial should be ordered"; however, a damage award that is supported by the evidence "will not be found to have been motivated by passion or prejudice"); *Dickerson v. Chadwell, Inc.,* 62 Wn. App. 426, 429, 814 P.2d 687 (1991) (noting that the error of law complained of must be prejudicial).

¶39 Hoskins relies on the amount and nature of the damage award as "substantial or persuasive indicia" of prejudice to support his claim that he is entitled to a new trial under CR 59. Br. of Appellant at 46. But because we hold that the evidence supports the jury's damage award, he fails to demonstrate prejudice and these contentions are without merit.

¶40 Finally, Hoskins contends that under CR 59(a)(5) and (9) the verdict was inconsistent and that justice was not done because the damage award was inadequate and the result of prejudice. He argues that "[a]lthough pain and suffering damages are subjective and the assessment of such damages is a determination by the jury, the size of the award, given the unrebutted evidence presented at the time of trial should shock the judicial conscience." Br. of Appellant at 48. Because the preaccident treatment records were only of minor significance in reference to the evidence as a whole and substantial evidence supports the jury's damage award, the verdict does not shock the judicial conscience. Thus, we hold that the trial

574

court did not abuse its discretion in denying his motion for a new trial.

¶41 We affirm.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

Review denied at 164 Wn.2d 1014 (2008).