96 P.3d 386 (2004)
152 Wash.2d 259
Jeffrey A. BARRETT and John R. Barrett, Jr., his guardian, Petitioners,
v.
LUCKY SEVEN SALOON, INC., Respondent.
No. 72984-I.
Supreme Court of Washington, En Banc.
Argued May 15, 2003.
Decided August 26, 2004.
*387 Helga Kahr, Joseph Chalverus, Seattle, for Petitioners.
Nicholas Phillip Scarpelli, Kenneth Scott Kagan, Carney Badley Spellman, Seattle, for Respondent.
Bryan Patrick Harnetiaux, Debra Leigh Williams Stephens, Spokane, for Amicus Curiae (Washington State Trial Lawyers Assoc.).
OWENS, J.
Petitioner Jeffrey Barrett was profoundly and permanently injured in an automobile accident caused by an intoxicated driver, Ned Maher. Jeffrey Barrett and John Barrett (Barrett) sued the Lucky Seven Saloon (the Lucky Seven), claiming that it had negligently overserved alcohol to Maher. The jury returned a defense verdict, and Barrett appealed. Barrett assigned error to the trial court's rejection of his proposed jury instructions on RCW 66.44.200(1), which provides that "[n]o person shall sell any liquor to any person apparently under the influence of liquor."[1] He also assigned error to the pretrial determination that, in lieu of the statutory "apparently under the influence" standard, the "obviously intoxicated" standard would be applied, thus requiring Barrett to show that the Lucky Seven had sold alcohol to Maher when he was "obviously intoxicated," not simply when he was "apparently under the influence."
The Lucky Seven argued to the Court of Appeals that the alleged instructional errors had not been properly preserved because, while Jeffrey Barrett had excepted to the court's refusal to instruct the jury on the statutory standard, he had not also lodged a separate objection to the court's converse decision to instruct the jury on the "obviously intoxicated" standard. The Court of Appeals ignored the Lucky Seven's procedural argument, and the Lucky Seven, in answering Barrett's petition for review, did not renew the argument as an alternative basis for affirming the Court of Appeals opinion. This court granted Barrett's petition for review on the sole issue of "whether RCW 66.44.200(1) establishes a standard of civil liability for damages caused by intoxicated drivers." Order (Mar. 4, 2003) at 2.
Deciding this issue in the affirmative, we reverse the Court of Appeals and remand the matter for a new trial.

FACTS
On October 11, 1995, Maher left work between 1:00 and 1:30 P.M. and went to the Lucky Seven, where he bought at least three pitchers of beer and drank at least two of them. Maher left the tavern at about 4:30 P.M. and, while driving home, fell asleep, crossed the centerline, and collided with Barrett's car, causing Barrett permanent, devastating injuries. When measured approximately two hours after the collision, Maher's blood alcohol content was .13 percent, exceeding the .10 percent limit applicable at the time. Maher pleaded guilty to vehicular assault while under the influence of intoxicating liquor.
Barrett filed a complaint against the Lucky Seven,[2] alleging that "the Lucky Seven Saloon sold and served additional and excessive quantities of alcohol to Ned Maher even though he was obviously intoxicated." Clerk's Papers (CP) at 187 (emphasis added); see also CP at 4. More specifically, Barrett asserted in his complaint that, "in violation *388 of RCW 66.44.200," the Lucky Seven had served Maher when he "was obviously intoxicated, under the influence of liquor and apparently under the influence of alcohol." CP at 188 (emphasis added).
On March 2, 2000, the Lucky Seven moved the court for an order forbidding Barrett to argue to the jury that RCW 66.44.200(1) expressed a standard of civil liability for sellers of alcohol.[3] With that motion pending, Barrett filed his proposed jury instructions on March 10, 2000. In proposed instructions 23-26, Barrett set forth his theory of the case regarding the duty of the Lucky Seven:
A Washington law provides: "No person shall sell any liquor to any person apparently under the influence of liquor."
The violation, if you find any, of a statute constitutes evidence of negligence.
An administrat[ive] regulation of the State of Washington provides: "No retail licensee (tavern) shall give or otherwise supply liquor to any person apparently under the influence of liquor."
The violation, if you find any, of an administrative regulation constitutes evidence of negligence."
CP at 130-33, Pls.' Proposed Jury Instructions 23-26. Barrett's instructions rely exclusively on the "apparently under the influence" standard found in RCW 66.44.200(1) and WAC 314-16-150(1).
On March 15, 2000, the trial court heard argument on the Lucky Seven's motion in limine. Counsel for the Lucky Seven introduced its one-paragraph motion with a single sentence: "This has to do with the difference between apparent standard and an obvious standard and I don't want them to argue apparent to the jury." Report of Proceedings (RP) (Mar. 15, 2000) at 65. Barrett's counsel, while conceding that the phrase "obviously intoxicated" had appeared in some Washington cases, countered that the legislature had "enunciated a different standard" and that Barrett "should be able to bring in the evidence of apparent, of that standard": "If the tavern violated the Washington State Alcohol Beverages Control Act by furnishing a person who is apparently under the influence of liquor, that's evidence of negligence, it is relevant, it should be allowed." Id. at 65-66. Consistent with Barrett's previously filed jury instructions, Barrett's counsel sought the right to argue to the jury that, by statute and administrative regulation, the Lucky Seven was not permitted to serve Maher if he was "apparently under the influence of liquor." However, the trial court granted the Lucky Seven's motion, precluding mention of the stricter "apparently under the influence" statutory standard.
On April 5, 2000, the last day testimony was taken in the trial, Barrett proposed 18 supplemental jury instructions. See CP at 754-72, Pls.' Suppl. Proposed Jury Instructions 39-56. Despite the Lucky Seven's successful motion in limine, Barrett nevertheless attempted to introduce the statutory "apparently under the influence" standard by pairing a proposed instruction on that standard with one on the standard permitted under the pretrial ruling: "No person shall sell any liquor to any person apparently under the influence of liquor," and "No person shall sell any liquor to any person obviously intoxicated." CP at 769-70, Pls.' Suppl. Proposed Jury Instructions 53-54. The first instruction is a verbatim statement of RCW 66.44.200(1),[4] while the second uses the statute as its matrix, substituting "obviously intoxicated" for "apparently under the influence of liquor." Consistent with supplemental proposed instructions 53 and 54, Barrett also proposed an instruction defining "apparent" and another distinguishing the words "apparent" and "obvious": "Unlike the determination of something obvious, determination of something apparent requires at least some reflection and thought." CP at *389 771-72, Pls.' Suppl. Proposed Jury Instructions 55-56.
At the close of the evidence, the trial court rejected Barrett's renewed attempts to inject the statutory language into the jury instructions. The court chose to instruct the jury that "[t]he plaintiff claims that the defendant was negligent in serving alcohol to a patron who was obviously intoxicated." CP at 157, Jury Instruction 8 (emphasis added). Jury instruction 11 stated that "[a] commercial establishment has a duty not to serve alcohol to obviously intoxicated persons," and jury instruction 12 went on to explain that, should the jury find that the Lucky Seven had served Maher when he was "obviously intoxicated," it must find the tavern negligent. CP at 160-61 (emphasis added). Jury instruction 13 defined "obviously" as "easily discovered, seen or understood." CP at 162. Barrett objected to the trial court's failure to give several of his converse instructions on the "apparently under the influence" standard. Among those were instructions quoting RCW 66.44.200(1), as well as instructions defining the word "apparent" and distinguishing the words "apparent" and "obvious." See CP at 130-31, Pls.' Proposed Jury Instructions 23-24; CP at 769, 771-72, Pls.' Suppl. Proposed Jury Instructions 53, 55-56. Apprised of Barrett's "position" and "the grounds therefor," Stuart v. Consolidated Foods Corp., 6 Wash.App. 841, 846, 496 P.2d 527 (1972), the trial judge rejected Barrett's proposed instructions concerning RCW 66.44.200(1), remarking that he and counsel had "been through this on the record before." RP (Apr. 6, 2000) at 22-23.
The jury returned a defense verdict, and Barrett appealed. The Court of Appeals affirmed. Although Barrett identified 22 issues in his petition for review, we granted review of but a single issue: "whether RCW 66.44.200(1) establishes a standard of civil liability for damages caused by intoxicated drivers." Order (Mar. 4, 2003) at 2.

ISSUE
Does RCW 66.44.200(1), which forbids the selling of alcohol "to any person apparently under the influence of liquor," establish a standard for a seller's civil liability for damages caused to a third party by an intoxicated driver?

ANALYSIS
Standard of Review. This court reviews de novo the alleged errors of law in a trial court's instructions to the jury. Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). Instructions are inadequate if they prevent a party from arguing its theory of the case, mislead the jury, or misstate the applicable law. Bell v. State, 147 Wash.2d 166, 176, 52 P.3d 503 (2002). Failure to permit instructions on a party's theory of the case, where there is evidence supporting the theory, is reversible error. State v. Williams, 132 Wash.2d 248, 259-60, 937 P.2d 1052 (1997) (citing State v. Griffin, 100 Wash.2d 417, 420, 670 P.2d 265 (1983)). As with a trial court's instruction misstating the applicable law, a court's omission of a proposed statement of the governing law will be "reversible error where it prejudices a party." Hue, 127 Wash.2d at 92, 896 P.2d 682. If a party proposes an instruction setting forth the language of a statute, the instruction will be "appropriate only if the statute is applicable, reasonably clear, and not misleading." Bell, 147 Wash.2d at 177, 52 P.3d 503.
The Two Standards: "Apparently under the Influence" and "Obviously Intoxicated." The parties agree that the two standards define different degrees of intoxication. Plainly, had the Lucky Seven viewed the phrases as synonymous, it would not have filed a motion in limine requesting that the "obviously intoxicated" standard be used to the exclusion of the statutory standard. Given the distinction that the average person could be expected to draw between the phrases "apparently intoxicated" and "obviously intoxicated," the Lucky Seven recognized that the latter standard was more favorable, permitting the commercial seller to serve patrons until they were "obviously drunk," not merely "apparently drunk." That the two standards differ finds support, not only in the Lucky Seven's motion and the average person's likely response to the two phrases, but also in prior Washington case law, as well as in the dictionary definitions of "apparent(ly)" and "obvious(ly)."
In Dickerson v. Chadwell, Inc., 62 Wash. App. 426, 814 P.2d 687 (1991), review denied, *390 118 Wash.2d 1011, 824 P.2d 490 (1992), Division One acknowledged a distinction between the two standards. In Dickerson, a bar patron who was assaulted by another customer sued the bar owner for negligently overserving the other customer. Division One determined that, because RCW 66.44.200 aimed to protect the public from the foreseeable harm of an intoxicated person's "driver error," the statutory standard of "apparently under the influence" was inapplicable to the plaintiff's suit against the bar owner for a customer's assault. Id. at 435, 814 P.2d 687. Addressing the difference between the statutory standard and the "obviously intoxicated" standard, the court turned to dictionary definitions and concluded that, "unlike the determination of something obvious, determination of something apparent requires at least some reflection and thought." Id. n. 4 (emphasis added).
As the Dickerson court suggested, the dictionary definitions of "apparently" and "obviously" establish a distinction: "apparently" is defined as "in an apparent manner: seemingly, evidently," whereas "obviously" is defined as "in an obvious manner: certainly." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 103, 1559 (2002) (emphasis added). The definitions of the adjectives likewise show that "apparently" implies less certainty than "obviously." The word "apparent" is defined as "readily perceptible to the senses" and "capable of being readily perceived by the sensibilities or understanding as certainly existent or present"; in contrast, "obvious" is defined as "readily perceived by the senses" and "readily ... perceived by the sensibilities or mind." Id. at 102, 1559 (emphasis added). While these definitions support Division One's conclusion that "unlike the determination of something obvious, determination of something apparent requires at least some reflection and thought," Dickerson, 62 Wash.App. at 435 n. 4, 814 P.2d 687 (emphasis added), other definitions reinforce the conclusion that the adverb "apparently" implies less certainty than "obviously." For example, the word "obvious" is also defined as "so simple and clear as to be unmistakable" and "disappointingly simple and easy to discover or interpret." WEBSTER'S THIRD, supra, at 1559. Whereas these definitions establish that something is "obvious" when it is virtually certain to the senses or understanding, definitions of "apparent" approach the opposite end of the semantic spectrum, suggesting that something that is "apparent" may be "distinct from or contrary to reality or truth" or may "describe a semblance contrary to truth and actuality." Id. at 102-03. Thus, these definitions of the adjectives likewise support the potentially distinct definitions of the adverbs  "obviously" as "certainly," "apparently" as "seemingly."
In sum, we accept the parties' position that the two standards  "apparently under the influence" and "obviously intoxicated"  differ meaningfully. Barrett sought this court's review because, in his view, the Lucky Seven's duty to stop serving Maher should have arisen when Maher became "apparently" or "seemingly" drunk, not when he reached the point of being "obviously"  "unmistakabl[y]" or "certainly"  drunk. Id. at 103. That the standards differ meaningfully was a presupposition of our granting Barrett's requested review of the issue set forth above; indeed, had we regarded the two standards as interchangeable, the issue of the applicability of the statutory standard would have been moot, for there could have been no possible error in instructing the jury on both of the synonymous standards, on one alone, or on the other.
Whether the Statutory Standard Establishes a Standard for Civil Liability. We must determine, as an issue of first impression, whether the statutory standard of RCW 66.44.200(1) establishes a standard for a seller's civil liability for damages caused to a third party by an intoxicated driver. The proper approach to this issue has clear roots in our case law. For more than 30 years, we have turned to the Restatement (Second) of Torts section 286 (1965) "[i]n deciding whether violation of a public law or regulation shall be considered in determining liability." Kness v. Truck Trailer Equip. Co., 81 Wash.2d 251, 257, 501 P.2d 285 (1972). Section 286 provides a four-part test:
The court may adopt as the standard of conduct of a reasonable [person] the requirements *391 of a legislative enactment ... whose purpose is found to be exclusively or in part
(a) to protect a class of persons which includes the one whose interest is invaded, and
(b) to protect the particular interest which is invaded, and
(c) to protect that interest against the kind of harm which has resulted, and
(d) to protect that interest against the particular hazard from which the harm results.
We have, in fact, previously applied Restatement section 286 to determine whether standards of conduct for commercial and social hosts may be derived from criminal provisions of the Washington State alcoholic beverages control act (WABC Act). See Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 475, 951 P.2d 749 (1998); Reynolds v. Hicks, 134 Wash.2d 491, 496, 951 P.2d 761 (1998); Crowe v. Gaston, 134 Wash.2d 509, 515-16, 951 P.2d 1118 (1998); Estate of Kelly v. Falin, 127 Wash.2d 31, 38, 896 P.2d 1245 (1995); Hansen v. Friend, 118 Wash.2d 476, 480-81, 824 P.2d 483 (1992); Christen v. Lee, 113 Wash.2d 479, 502-03, 780 P.2d 1307 (1989). In Schooley, we acknowledged that criminal provisions of chapter 66.44 RCW had established the duty of care in civil suits:
Although the Legislature was silent on the issue of civil liability, this court has recognized that the criminal provisions of the WABC Act may create a minimum standard of conduct for a reasonable person. This court has recognized that RCW 66.44.320, which prohibits vendors from selling alcohol to minors, creates a standard of care that when breached can be considered by the trier of fact as evidence of negligence.
134 Wash.2d at 473, 951 P.2d 749 (citing Purchase v. Meyer, 108 Wash.2d 220, 737 P.2d 661 (1987)). While in Schooley, Reynolds, Crowe, and Hansen, Restatement section 286 was applied to provisions forbidding the selling or giving of alcohol to minors,[5] in Kelly and Christen, the applicability of RCW 66.44.200(1) was raised.
Although no prior case has considered whether RCW 66.44.200(1) establishes the standard of civil liability for a commercial host whose allegedly overserved adult patron injures a third party in a drunk driving accident, the parameters in Kelly are very similar. There, the two consolidated cases involved the liability of commercial hosts who had sold alcohol to adult patrons who thereafter caused drunk driving accidents, and the plaintiffs (the adult patrons) asked the court to apply RCW 66.44.200(1). Whereas the cases in Kelly addressed the issue of a tavern's first party liability (liability for injuries to the drunk driver himself), the present case involves the tavern's third party liability (liability for injuries the drunk driver causes to another). In Kelly, the plaintiffs argued that, apart from the common law rule, "RCW 66.44.200 establishes a duty of care on commercial vendors." 127 Wash.2d at 38, 896 P.2d 1245. The Kelly court acknowledged that this court had previously relied on Restatement section 286 in holding that RCW 66.44.270(1) established a duty of care, making social hosts liable for injuries to a minor who had been given alcohol. Id. at 39, 896 P.2d 1245 (citing Hansen, 118 Wash.2d at 481, 824 P.2d 483). The court then considered whether "RCW 66.44.200, which proscribes selling alcohol to intoxicated adults, was intended to shield the drunk driver from responsibility for his or her own actions." Id. Distinguishing the drunk driver himself from the "innocent bystander hit by a drunk driver," the court concluded that "it would be utterly fatuous to interpret RCW 66.44.200 as protecting the drunk driver." Id. at 39-40, 896 P.2d 1245. Notably, in finding that the statute could not be construed to extinguish the drunk driver's "accountability" for his own harm, the Kelly court did not question whether RCW 66.44.200(1) could establish a civil liability standard for injuries to third parties. Id. at 40, 896 P.2d 1245.
That the Kelly court implicitly found RCW 66.44.200(1) applicable as a standard of liability for harms caused to third parties is not *392 surprising, since this court had previously applied the Restatement section 286 test to RCW 66.44.200(1) and had recognized that, "in enacting the statute against furnishing intoxicating liquor to a person who appears intoxicated, the Legislature intended to protect against foreseeable hazards resulting therefrom." Christen, 113 Wash.2d at 503, 780 P.2d 1307. The Christen court concluded that "a subsequent criminal assault," unlike an automobile accident arising from an overserved patron's "driver error," was not a foreseeable harm. Id. Drawing on the Christen decision, the Court of Appeals held in a subsequent case that it was error to apply the "apparently under the influence" standard because an assault committed by an allegedly overserved patron was outside the "field of danger with which the statute is concerned"  that is, "driver error."[6]
In sum, we have used the Restatement section 286 test for more than three decades; we have applied the test to determine whether standards of civil liability may be derived from criminal provisions of the WABC Act; we have weighed the applicability of the RCW 66.44.200(1) standard in a case involving a commercial host's liability for the drunk driver's own injuries, rejecting first person liability in contrast to third person liability; and we have stated, in particular, that the RCW 66.44.200(1) standard would not apply in the context of third persons assaulted by an overserved patron, since the statute targets harms to third parties caused by the allegedly overserved patron's driver error. Thus, as this summary shows, although the issue in the present case is one of first impression, it is one that this court's prior decisions have provided a clear road map for resolving. En route to holding that the RCW 66.44.200(1) standard would not apply in a first party drunk driving case or in a third party assault case, we have indicated that the purpose of the statute is to protect third parties from drunk driving accidents caused by a commercial host's overservice of an adult patron. That circumstance is now before us: Barrett contends that the purpose of RCW 66.44.200(1) was to protect him, a third party plaintiff injured in an automobile accident caused by a commercial host's alleged overservice of an adult patron.
The four-part Restatement test leads to but one conclusion: Barrett was entitled to argue the statutory "apparently under the influence" standard to the jury. The first inquiry under Restatement section 286 is whether Barrett was a member of the class protected by RCW 66.44.200(1). The general purpose of Title 66 RCW is "the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose." RCW 66.08.010 (emphasis added). RCW 66.44.200(1), like all provisions of Title 66, was intended to protect the citizens of Washington, and Barrett is a member of that protected class. The second and third inquiries under the Restatement test are whether RCW 66.44.200(1) was intended "to protect the particular interest ... invaded ... against the kind of harm which has resulted." Clearly, this provision of Title 66 was intended to protect Barrett's personal welfare, health, and safety against the catastrophic financial, physical, and emotional harm that resulted. The fourth and final inquiry under the Restatement test is whether the statute aimed to protect Barrett's interest in his welfare, health, and safety "against the particular hazard from which the harm results." As noted above, this court has already recognized that RCW 66.44.200(1) aimed to protect against the particular peril that caused Barrett's harm  "alcohol-induced driver error." Christen, 113 Wash.2d at 495, 780 P.2d 1307 (citing Burkhart v. Harrod, 110 Wash.2d 381, *393 395, 755 P.2d 759 (1988) (Utter, J., concurring) (describing the spectrum of foreseeable consequences of drinking and driving as "some driving error, or at the most a tragic accident")). Based on the four-part test, we therefore conclude that RCW 66.44.200(1), which forbids the selling of alcohol "to any person apparently under the influence of liquor," defines the minimum standard of conduct for commercial hosts whose alleged overservice causes a drunk driving accident injuring a third party. Barrett should have been permitted to tell the jury that a commercial host has a statutory duty to refrain from serving persons "apparently under the influence of liquor." He should have been allowed to argue that the Lucky Seven served Maher when he was "apparently under the influence of liquor" and that such service constituted evidence of negligence.
In concluding that RCW 66.44.200(1) establishes the standard of civil liability under the facts of this case, we upset no established precedent and usurp no legislative prerogative. For more than 25 years, Washington courts have applied the Restatement (Second) of Torts section 286 to provisions of chapter 66.44 RCW to determine whether the criminal statutes may establish minimum standards of conduct in civil suits, see Callan v. O'Neil, 20 Wash.App. 32, 578 P.2d 890 (1978), and for 15 years, we have regarded RCW 66.44.200(1) as applicable to cases involving "alcohol-induced driver error"  a position refined 10 years ago in Kelly to extinguish a commercial host's first party liability. Christen, 113 Wash.2d at 495, 780 P.2d 1307; Kelly, 127 Wash.2d 31, 896 P.2d 1245. Moreover, because commercial hosts have been under this same statutory obligation for 70 years  that is, the obligation not to sell alcohol to one "apparently under the influence of liquor"  our opinion today adds no new, additional burden; if this holding nevertheless were to make liquor licensees more vigilant in meeting their preexisting statutory obligation, then the public would be better protected from the enormous personal and social costs arising from drunk driving accidents. See Halvorson v. Birchfield Boiler, Inc., 76 Wash.2d 759, 764, 458 P.2d 897 (1969) (quoting Rappaport v. Nichols, 31 N.J. 188, 205-06, 156 A.2d 1 (1959)).
By granting the Lucky Seven's motion in limine and rejecting Barrett's jury instructions on the statutory standard, the trial court prohibited Barrett from arguing his theory of the case and informing the jury of the applicable law. Given that the two standards differ meaningfully, jury instructions on both standards would have improperly misled the jury. Bell, 147 Wash.2d at 176, 52 P.3d 503. The trial court should have instructed the jury on the statutory standard alone, as requested in Barrett's original set of proposed jury instructions. Because Barrett was required to show that the Lucky Seven had sold alcohol to Maher when he was "obviously intoxicated," not simply "apparently under the influence," the erroneous instructions prejudiced Barrett's case against the Lucky Seven. We therefore reverse the decision of the Court of Appeals and remand this matter for a new trial.
WE CONCUR: ALEXANDER, C.J., and JOHNSON, IRELAND, CHAMBERS, FAIRHURST, JJ.
BRIDGE, J. (concurring in part/dissenting in part).
I concur with the majority to the extent that it concludes that Barrett has adequately preserved the issue of whether RCW 66.44.200(1) establishes the standard of care for civil cases. However, I cannot agree with the majority's resolution of this issue and as to that, I am in agreement with the analysis as well as the result set forth in the dissenting opinion.
SANDERS, J. (dissenting).
"Given a choice between a rule that fosters individual responsibility and one that forsakes personal accountability, we opt for personal agency over dependency and embrace individual autonomy over paternalism." Estate of Kelly v. Falin, 127 Wash.2d 31, 42, 896 P.2d 1245 (1995).
In the context of negligent overservice of alcohol, we must never forget it is the patron who insists on drinking, it is the patron who pays for the privilege, it is the patron who imbibes to excess, and it is the patron  not *394 the business  who voluntarily elects to get behind the wheel rather than walk, take a taxi, or ride home with a sober friend. The reciprocal of individual responsibility for one's own misdeeds is the necessary absence of responsibility for the misconduct of others. Deep pockets do not change the equation.
Today's majority departs from this fundamental precept. It not only abandons decades of jurisprudence which hold and reiterate the standard of civil liability in similar cases to be service to an "obviously intoxicated" patron, but it does so by considering a claimed error not properly preserved for review. I would affirm the jury's dismissal of this action.

I. An Error is Waived When the Party Fails to Object at Trial
The majority ultimately grants Barrett a new trial because it concludes the trial court erred by instructing the jury Lucky Seven's duty to Barrett was to refrain from serving patron Ned Maher in an "obviously intoxicated" condition. Majority at 392. Whatever the merit of this view, Barrett's failure to argue to the trial court that standard was faulty precludes him from raising it on appeal.
A litigant who disagrees with a jury instruction is plainly required to "state distinctly the matter to which he objects and the grounds of his objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made." CR 51(f) (emphasis added). The purpose of this rule "is to enable the trial court to correct any mistakes in the instructions in time to prevent the unnecessary expense of a second trial." Roumel v. Fude, 62 Wash.2d 397, 400, 383 P.2d 283 (1963), quoted in Estate of Ryder v. Kelly-Springfield Tire Co., 91 Wash.2d 111, 114, 587 P.2d 160 (1978). Failure to object to an instruction in compliance with CR 51(f) generally precludes appellate review of the instruction. Reed v. Pennwalt Corp., 93 Wash.2d 5, 6-7, 604 P.2d 164 (1979) (per curiam). Such instructions are the law of the case. Guijosa v. Wal-Mart Stores, Inc., 144 Wash.2d 907, 917, 32 P.3d 250 (2001).
Here the trial court instructed the jury that Lucky Seven owed a "duty not to serve alcohol to obviously intoxicated persons." Clerk's Papers (CP) at 160 (Instruction No. 11). It further instructed the jury to find Lucky Seven negligent if it served Maher "when he was obviously intoxicated," and to find Lucky Seven not negligent if Maher was not "obviously intoxicated" when Lucky Seven served him. CP at 161 (Instruction No. 12). Barrett did not except to any of these instructions, and in fact overtly agreed to their use.[1] They are therefore the law of the case and govern Lucky Seven's duty to Barrett.
Yet the majority leapfrogs this issue, citing the limited nature of the order granting review, the Court of Appeals' failure to discuss preservation of error, and Lucky Seven's successful motion in limine to preclude Barrett from introducing the "apparently under the influence" standard at trial. But it is not appropriate to ignore Barrett's failure to preserve the alleged error merely because of the limited nature of this court's order granting the petition for review, which does not determine in itself that the claimed error was properly preserved for review. "Compliance with [CR 51(f)] is so important" that this court can enforce the rule sua sponte. Reed, 93 Wash.2d at 6-7, 604 P.2d 164; accord Bitzan v. Parisi, 88 Wash.2d 116, 126, 558 P.2d 775 (1977). This court has a "duty to notice" a CR 51(f) violation when it occurs, Bitzan, 88 Wash.2d at 126, 558 P.2d 775, and the appellate rules governing this court's scope of review contemplate exactly that. See RAP 13.7(c) ("The scope of review [by *395 the Supreme Court] may be further affected by the circumstances set forth in rule 2.5.").[2]
Even if we do not raise the issue sua sponte, it is equally well settled this court can affirm a lower court's decision on any basis adequately supported by the record. In re Marriage of Rideout, 150 Wash.2d 337, 358, 77 P.3d 1174 (2003); Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 344, 883 P.2d 1383 (1994). Lucky Seven thoroughly briefed and argued to the Court of Appeals that the jury verdict should be affirmed because Barrett failed to comply with the rules governing preservation of error. See Br. of Resp't at 24-27. I agree.
Finally, the record indicates Barrett argued "obviously intoxicated" from the lawsuit's genesis. Barrett's complaint alleged Lucky Seven "sold and served additional and excessive quantities of alcohol to Ned Maher even though he was obviously intoxicated," CP at 187 (emphasis added), and breached its duty to Barrett by allegedly furnishing alcohol to Maher who "was obviously intoxicated, under the influence of liquor and apparently under the influence of alcohol" at the time of service, CP at 188 (emphasis added). Barrett further argued in his trial brief (filed prior to the trial court's granting Lucky Seven's motion in limine) that Lucky Seven's "liability will attach where the patron was `obviously intoxicated' while in the tavern." CP at 102. And Barrett affirmatively proposed an instruction that stated: "No person shall sell any liquor to any person obviously intoxicated." CP at 770 (Pls.' Proposed Instruction 54). This is the precise instruction the majority now claims to be erroneous, ordering a new trial. Majority at 392.
Had all of Barrett's proposed instructions been given, the result would have been a hodgepodge, rife with self-contradictory references to both "apparent" and "obvious." The jury would have been instructed that Lucky Seven owed a duty to refrain from "sell[ing] any liquor to any person apparently under the influence of liquor," CP at 769 (Pls.' Proposed Instruction 53), that Lucky Seven owed a duty to refrain from "sell[ing] any liquor to any person obviously intoxicated," CP at 770 (Pls.' Proposed Instruction 54), and to return a plaintiff's verdict if the served patron was "obviously intoxicated" at the time of service, CP at 161 (Instruction 12). The jury would have been further instructed that the term "apparent" differs in meaning and is easier to prove than something that is "obvious." See CP at 772 (Pls.' Proposed Instruction 56).
The trial court possesses discretion to refuse a proposed instruction if it will confuse the jury, even if it is an accurate statement of the law. See Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 165-67, 876 P.2d 435 (1994). Though I question whether these standards differ in any event,[3] assuming the standards are the same, the trial court properly refused cumulative instructions. Id. at 166-67, 876 P.2d 435. If the standards differ, which all parties apparently believe they do, then the trial court properly refused conflicting instructions that would inevitably have confused the jury.
If the purpose of the rules on preservation of error is to adequately inform the trial court of its alleged error so it may be corrected short of a costly appeal and retrial, this record does not demonstrate the trial court was cognizant of Barrett's claim the "obviously intoxicated" standard of care should be wholly supplanted by the "apparently under the influence" standard. But in effect the majority allows this party a second *396 bite of the apple on the grounds the jury was improperly instructed on a theory of law he maintained was an accurate statement of the law throughout pleadings, pretrial, and trial. Not even the most generous reading of our cases addressing the preservation of error doctrine allows that. Barrett pleaded "obviously intoxicated," briefed "obviously intoxicated," proposed "obviously intoxicated," and did not take exception when the jury was instructed on "obviously intoxicated." One who makes his bed must sleep in it too. As the claimed error was "obviously" not preserved in this case, I cannot see as a matter of law how the majority can even justify review of an instruction which all parties accepted without exception.

II. "Obviously Intoxicated" Is the Standard of Care Governing Alleged Overservice of Alcohol by Commercial Purveyor.
Despite Barrett's failure to comply with the rules governing preservation of error and despite the majority's fancy two-step around the issue, I nonetheless posit the "obviously intoxicated" instruction was correct in any event.
The definitive inquiry is whether the trial court erred by refusing to instruct the jury on the language of RCW 66.44.200(1), which prohibits any person from "sell[ing] any liquor to any person apparently under the influence of liquor." The majority finds error in the trial court's refusal to accept Barrett's "apparently under the influence" instructions, claiming it denied Barrett the opportunity to argue his "theory of the case." Majority at 392. However jury instructions which set forth the language of a statute may be used "only if the statute is applicable, reasonably clear, and not misleading." Bell v. State, 147 Wash.2d 166, 177, 52 P.3d 503 (2002) (emphasis added). Thus even if Barrett adequately preserved the claimed error by presenting a "theory of the case" that Lucky Seven's civil liability standard of care was defined by RCW 66.44.200(1) and by that statute alone (a suspect proposition given Barrett's continued requests at trial to argue both standards), the statute must still be applicable to the case at hand in order to find error in its use.
The majority goes where no court has gone before by holding a commercial purveyor of alcohol may now be found liable to a third party when the third party is injured by a drunk driver who became impaired at the purveyor's establishment after he was "`apparently under the influence of liquor.'" Majority at 392 (quoting RCW 66.44.200(1)). Precedent and logic compel this dissent.

A. Since Repeal of Dramshop Act, Washington Courts Have Consistently Required "Obvious Intoxication" Before Liability Attaches for Overservice to Adult.
While the majority now asserts for the first time that RCW 66.44.200(1) (adopted in 1933, see LAWS OF 1933, Ex.Sess., ch. 62, § 36) governs civil liability, such liability in Washington was governed by an entirely different statute until 1955, namely the Dramshop Act, adopted in 1905. See former RCW 4.24.100 (LAWS OF 1905, ch. 62, § 1), repealed by LAWS OF 1955, ch. 372, § 1. That statute granted a cause of action to any person injured by another person's intoxication against the person or entity who "by selling or giving intoxicating liquors, have caused the intoxication of such person." Id. But the legislature repealed the law in 1955, thereby leaving no statutory cause of action for persons injured by overservice of alcohol. However we recognized 14 years later a common law cause of action grounded in negligence principles does exist in Washington and resulting in the adoption of common law principles of negligence to govern such liability. See Halvorson v. Birchfield Boiler, Inc., 76 Wash.2d 759, 458 P.2d 897 (1969).
Halvorson sought recovery against an employer who furnished alcohol to an employee at a Christmas party. Id. at 760, 458 P.2d 897. The plaintiffs alleged the employer was negligent for serving alcohol to the employee while he was intoxicated and therefore unable to drive safely. Id. This court upheld the dismissal for failure to state a cause of action, noting the general common law rule that commercial furnishers of alcohol are generally not liable for damages caused by *397 the intoxicated person they serve, reasoning it is the alcohol consumption that proximately causes the harm, not the furnishing of it. Id. at 762, 458 P.2d 897. The court went on to adopt 30 AM.JUR. Intoxicating Liquors § 521 (1958), which states:
It is generally held that there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished, even though the liquor was sold or given to one in violation of a law other than under a civil damage act,[[4]] so long as the person to whom the liquor was sold or given was not in such a state of helplessness or debauchery as to be deprived of his will power or responsibility for his behavior.
Id. (emphasis added) (footnotes omitted). Thus, under the aforementioned rule fully adopted by this court over 30 years ago, a commercial purveyor of alcohol is not liable for injuries caused by an intoxicated patron unless that patron is so helpless that he lacks will power, even if the service was done illegally.
We subsequently applied the Halvorson rule 13 years later, stating, "In Halvorson, we recognized and adopted the general common law rule of nonliability for furnishing intoxicants to an able-bodied person, while simultaneously recognizing the exceptions to the rule for obviously intoxicated persons, persons in a state of helplessness, or persons in a special relationship to the furnisher of intoxicants." Wilson v. Steinbach, 98 Wash.2d 434, 438, 656 P.2d 1030 (1982) (emphasis added) (citing Halvorson, 76 Wash.2d at 762-63, 458 P.2d 897). Wilson affirmed summary judgment of dismissal of the plaintiffs' claim because they could not establish the drunk driver "was in an obviously intoxicated or helpless condition" when she drank at the defendants' party. Id. (emphasis added).
Yet the majority still claims this is a matter of "first impression," majority at 389, ultimately concluding RCW 66.44.200(1) applies to cases of civil liability. However in Purchase v. Meyer, 108 Wash.2d 220, 737 P.2d 661 (1987), we identified the distinction between RCW 66.44.200(1), as used for criminal sanctions and licensure revocations, with the different civil liability standard:
[RCW 66.44.200(1)] is enforced against commercial purveyors of alcoholic beverages by agents of the Washington State Liquor Control Board. Local ordinances to this same effect are also enforced by local police agencies. Commercial purveyors of alcoholic beverages who violate [RCW 66.44.200(1)] not only face criminal sanctions, but also risk suspension or revocation of their licenses to sell alcoholic beverages in this state.
Id. at 225, 737 P.2d 661 (footnote omitted). We then shifted our focus to the different standard used by courts in civil actions:

Insofar as civil liability is concerned, it has long been the common law of this state that a commercial purveyor of alcoholic beverages may be held liable for damages caused by furnishing intoxicating beverages to an "obviously intoxicated" person. Although the person to whom alcoholic beverages are sold knows how much alcohol he or she has had to drink before entering an establishment and making a purchase, the seller ordinarily has no way of knowing that unless and until the purchaser becomes "obviously intoxicated."

Id. (emphasis added) (footnote omitted). Though Purchase expressly recognized RCW 66.44.200(1) was a standard for criminal sanctions and licensure revocations alone  but not civil liability  the majority now holds that distinction is no longer valid.
The majority now insists its decision "upset[s] no established precedent." Majority at 392. Au contraire, both this court and the Court of Appeals have consistently reiterated liability attaches only when service is to an "obviously intoxicated" person. Fairbanks v. J.B. McLoughlin Co., 131 Wash.2d 96, 102, 929 P.2d 433 (1997) (per curiam) (holding a plaintiff, to sustain a cause of action for negligent furnishing of alcohol, must show that the defendant furnished alcohol to a person who was, inter alia, "`obviously intoxicated'" *398 (quoting Dickinson v. Edwards, 105 Wash.2d 457, 461, 716 P.2d 814 (1986))); Estate of Kelly, 127 Wash.2d at 37, 896 P.2d 1245 ("[A]n injured bystander may bring a negligence action against a commercial vendor for serving an obviously intoxicated adult."); Christen v. Lee, 113 Wash.2d 479, 488, 780 P.2d 1307 (1989) (discussed infra); Burkhart v. Harrod, 110 Wash.2d 381, 382, 755 P.2d 759 (1988) ("Under this state's common law, commercial furnishers of alcohol who serve `obviously intoxicated' customers can be held liable for damages caused by that intoxication."); Purchase, 108 Wash.2d at 225, 737 P.2d 661; Wilson, 98 Wash.2d at 440, 656 P.2d 1030; Rinks v. Bearss, 83 Wash.App. 334, 337, 921 P.2d 558 (1996) (recognizing common law exception to general rule of nonliability exists when one "furnish[es] liquor to a person who is obviously intoxicated"); Tallariti v. Kildare, 63 Wash. App. 453, 459, 820 P.2d 952 (1991) ("Furnishers are liable only if the alcohol is served to one who is obviously intoxicated, helpless, or in a special relationship to the furnisher."); Halligan v. Pupo, 37 Wash.App. 84, 88, 678 P.2d 1295 (1984) (injured party must plead and prove "obvious intoxication" in order to recover from furnisher of alcohol).

B. Majority Cannot Limit Its Holding to Automobile Cases
The majority claims its result is entirely consistent with this long line cases because (1) Barrett was a third party plaintiff, (2) injured in an automobile accident, (3) by an adult patron, (4) who was allegedly overserved by a commercial establishment. Majority at 391. Thus, the majority claims its holding can be limited to those cases involving only those four factors. This distinction and its purported limitation are unpersuasive, and I need only cite Christen, 113 Wash.2d 479, 780 P.2d 1307, to demonstrate the anomalous consequence that will ensue because of the majority's disposition.
In Christen we considered whether a commercial establishment could be liable to a third party when a patron is allegedly overserved at the establishment and subsequently assaults the third party causing injury. Id. at 483, 780 P.2d 1307. First we reaffirmed that "[u]nder the common law of this state, a commercial purveyor of alcoholic beverages owes a duty not to furnish intoxicating liquor to a person who is obviously intoxicated." Id. at 488, 780 P.2d 1307 (emphasis added). We then held a commercial establishment could be held liable for overserving a patron who is obviously intoxicated and assaults a third party causing injuries, "but only if the drinking establishment which furnished the intoxicating liquor had some notice of the possibility of harm from prior actions of the person causing the injury, either on the occasion of the injury or on previous occasions." Id. at 491, 780 P.2d 1307. Thus Christen allows a plaintiff to recover for injuries suffered as a result of being assaulted by an overserved patron only if that plaintiff can make two showings: (1) the patron was "obviously intoxicated" when he or she was served by the commercial establishment; and (2) the establishment is on notice that the patron is prone to violence. Id.; accord Dickerson v. Chadwell, Inc., 62 Wash.App. 426, 434-35, 814 P.2d 687 (1991).
Christen cannot legitimately survive today's majority, as commercial establishments now illogically suffer under a dual standard of care that varies depending solely on the patron's future conduct, completely outside the defendant's control. Under the majority's rule, an establishment is liable for serving a patron "apparently under the influence" if he or she subsequently injures another in an automobile collision, whereas the same establishment would not be liable for service to a patron "apparently under the influence" who subsequently engages in an activity unrelated to driving, such as negligently firing a gun, see Shelby v. Keck, 85 Wash.2d 911, 916, 541 P.2d 365 (1975) (affirming directed verdict in defendant establishment's favor where intoxicated patron negligently fired a gun and killed a bystander because law required a showing the "liquor [was] sold to a person who [was] so intoxicated that he ha[d] been effectively deprived of his will power or responsibility for his actions"), or assault, see Christen, 113 Wash.2d at 491, 780 P.2d 1307.
Common law negligence begins with either an act or a failure to act. Nist v. Tudor, 67 *399 Wash.2d 322, 331, 407 P.2d 798 (1965). If a defendant owes a legal duty not to engage in an action, but yet negligently does so, the scope of that duty is governed by concepts of foreseeability. Burkhart, 110 Wash.2d at 395, 755 P.2d 759; Christen, 113 Wash.2d at 492, 780 P.2d 1307. Whether a duty exists at all may depend upon the status of the defendant, see Burkhart, 110 Wash.2d at 382, 755 P.2d 759 (no duty imposed on social hosts), or plaintiff, see Estate of Kelly, 127 Wash.2d at 37, 896 P.2d 1245 (no duty to plaintiffs injured by their own intoxication), but the nature of that duty must not waver if it exists, especially when the eventual harms are equally foreseeable. But the majority's holding does exactly that when viewed in light of Christen: the same action  service to a patron "apparently under the influence"  will be breach of a duty on one hand but no breach on the other even though both injuries are foreseeable.
And this anomaly could easily appear in a single trial before a single jury. Suppose a patron is drinking at his local tavern, and the bartender knows the patron is prone to violence. The bartender then serves the patron one more drink while he is "apparently under the influence," but not quite "obviously intoxicated." The patron assaults the bystander sitting two stools down (Plaintiff # 1), then gets in his car, drives off (still a little steamed over the altercation), and injures another person in an automobile accident (Plaintiff # 2). Both Plaintiff # 1 and Plaintiff # 2 sue the tavern to recover damages. The trial court joins the lawsuits, which it certainly has the authority and discretion to do as both lawsuits arose out of the same transaction or occurrence, namely selling the patron one more beer. See CR 20(a).
Assuming both plaintiffs affirmatively show the patron was only "apparently under the influence" but not "obviously intoxicated" at the time the alleged overservice occurs, and that the establishment was well aware of the patron's violent nature, the jury then faces the inevitable conundrum created by the majority. The jury would find for the defense in Plaintiff # 1's case, not because assault was an unforeseen consequence but rather because Christen and Dickerson require the patron be "obviously intoxicated" before liability attaches. Christen, 113 Wash.2d at 491, 780 P.2d 1307; Dickerson, 62 Wash.App. at 434-35, 814 P.2d 687. Plaintiff # 2 would be a different story. Simultaneous to ruling in the tavern's favor in Plaintiff # 1's case because the patron was not "obviously intoxicated," the jury would then hear the same establishment's duty to another plaintiff was to refrain from serving the same patron in the same act in a different condition, namely while he was "apparently under the influence of liquor." The jury would follow these instructions and find for Plaintiff # 2 but not Plaintiff # 1.
In the aforementioned hypothetical the injuries of both plaintiffs were foreseeable as a result of a single act by the defendant: serving the patron one more beer. Yet despite the equal foreseeability of the eventual harms, the majority's holding renders this lone act committed on one night actionable in one setting and not actionable in the other. Liability for overservice now becomes governed not by the conduct of the party who will compensate the plaintiff or the foreseeability of the eventual harm, but rather by the subsequent conduct of an able-bodied adult  conduct completely outside the defendant's control. But I posit a tavern's liability cannot rationally vary between two separate plaintiffs when the events causing their respective injuries are equally foreseeable. Lucky Seven should be entitled to rely on existing law to define its duty and know when its service to a patron will result in civil liability.
As such I take exception to the majority's emphasis on "driver error." Majority at 391. The majority asserts "driver error" is the chief malady that RCW 66.44.200 seeks to prevent, and therefore both the trial court and Court of Appeals erred in their reliance on Dickerson, 62 Wash.App. 426, 814 P.2d 687. Majority at 391 & n. 7. This argument is unpersuasive for three reasons.
First, the legislature intended RCW 66.44.200(1) to be "liberally construed" to protect "the welfare, health, peace, morals, and safety" of Washington citizens. LAWS OF 1933, Ex.Sess., ch. 62, § 2, codified at RCW 66.08.010. "[T]he welfare, health, peace, *400 morals, and safety" of Washington citizens are supported by the prevention of not only driver error, but also alcohol poisoning, public drunkenness, and disorderly conduct. Indeed an establishment may violate RCW 66.44.200(1) whether an intoxicated patron gets behind the wheel or not, though such action is a necessary prerequisite for civil liability.
Second, fluctuating a defendant establishment's duty based solely on another's conduct forces these establishments into the role of insurer, compelling their duty to vary based on factors wholly outside of their control. The majority's holding will inevitably lead to inconsistent results, see infra at 390, mandating either wholesale abrogation of the "obviously intoxicated" standard or, better yet, overruling this decision. Consistency in the law demands more than a search for the deepest pockets.
Finally, and most important, Dickerson based its holding on Christen, the underpinning of which was our "well considered and reasoned reluctance on the part of this court, in light of the Legislature's repeal of this state's dramshop act, to now judicially decree common law liability in cases other than those fitting within the well-recognized exceptions to the common law rule." Christen, 113 Wash.2d at 495, 780 P.2d 1307. The majority fails to mention this reluctance in its tunnel-visioned approach to consider the Restatement and the Restatement alone. There is no evidence that the legislature intended to modify the standard we have previously articulated. RCW 66.44.200(1) has been in effect for 70 years, see LAWS OF 1933, Ex.Sess., ch. 62, § 36, and at all times relevant to our precedential cases which recognized an "obviously intoxicated" standard. Purchase, almost 20 years ago, expressly distinguished the statute from the civil liability standard. 108 Wash.2d at 225, 737 P.2d 661. And it is firmly settled "[t]he Legislature is deemed to acquiesce in the interpretation of the court if no change is made for a substantial time after the decision." State v. Coe, 109 Wash.2d 832, 846, 750 P.2d 208 (1988).
In light of the majority's holding it is now both "apparent" and "obvious" that our former restraint has turned to zeal, and our former "well-recognized" exceptions are no longer so easily recognized.

C. Restatement Not Applicable Where Countervailing Reasons Against Usage Exist
The majority claims its ultimate disposition by following a "clear roadmap." Majority at 391. The majority weaves to its destination by using the four-part Restatement test as its vehicle. See majority at 390 (citing RESTATEMENT (SECOND) OF TORTS § 286 (1965)). The Restatement suggests this court "may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment." RESTATEMENT (SECOND) OF TORTS § 286 (1965) (emphasis added), adopted in Young v. Caravan Corp., 99 Wash.2d 655, 659-60, 663 P.2d 834, 672 P.2d 1267 (1983). On the other hand, we may not. The Restatement recognizes an option for the court  not a mandate. Certainly we have no obligation to simply regurgitate the statutory text to create a new duty, especially when one duty already preexists, as is incontestably true here.

1. No New Duty
Arguing for its conclusion, the majority cites prior cases that have adopted various provisions of the Washington Alcohol Beverage Control (WABC) Act to set standards for a seller's liability for furnishing alcohol to minors. See majority at 390 (citing Crowe v. Gaston, 134 Wash.2d 509, 951 P.2d 1118 (1998); Reynolds v. Hicks, 134 Wash.2d 491, 951 P.2d 761 (1998); Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 951 P.2d 749 (1998); Hansen v. Friend, 118 Wash.2d 476, 824 P.2d 483 (1992)). The underpinnings of those cases rest on the notion that "persons under 21 years of age are neither physically nor mentally equipped to handle the consumption of intoxicating liquor." Hansen, 118 Wash.2d at 481, 824 P.2d 483, quoted in Schooley, 134 Wash.2d at 476, 951 P.2d 749. This view is at least arguably in line with the basis for our decision in Halvorson, which excepted from nonliability service to persons deprived of their will power. See Halvorson, 76 Wash.2d at 762, 458 P.2d 897; see also *401 Shelby v. Keck, 85 Wash.2d 911, 916, 541 P.2d 365 (1975) (affirming directed verdict in defendant establishment's favor where intoxicated patron negligently injured a bystander, holding "an action is allowed at common law... where liquor is sold to a person who is so intoxicated that he has been effectively deprived of his will power or responsibility for his actions"). But these cases are quite distinctive from the one at bar, where we consider a very different duty involving the otherwise lawful service to an adult.
A closer analysis of the cases upon which the majority relies exposes its error. Hansen held RCW 66.44.270, which criminalizes furnishing alcohol to a minor, imposed a duty of care on a person in a social host position, the breach of which was grounds for a civil action. Hansen, 118 Wash.2d at 482, 824 P.2d 483. Schooley held the duty of care to refrain from selling alcoholic beverages to minors that a vendor owes its minor customers extended to third party minors to whom the minor customer supplied alcohol. Schooley, 134 Wash.2d at 477-78, 951 P.2d 749. The court noted former RCW 66.44.320[5] was intended to protect all minors, not just the one purchasing the alcohol. Id. at 476-77, 951 P.2d 749. Reynolds considered whether a social host owed a duty to a plaintiff injured by a minor whom the host furnished alcohol in violation of RCW 66.44.270, ultimately concluding no duty exists. Reynolds, 134 Wash.2d at 503, 951 P.2d 761. Finally Crowe determined a commercial purveyor of alcohol owes a duty to a minor injured by another minor who obtained alcohol as a result of the purveyor's illegal sale, but the minor who illegally obtained the alcohol did not owe a duty to the minor. Crowe, 134 Wash.2d at 513, 518-20, 522, 951 P.2d 1118.
Each of these cases examined the WABC Act to determine whether a certain class of defendants owed a duty to a certain class of plaintiffs. In other words, the query was whether any duty existed at all. I cannot disagree in principle that this court may utilize chapter 66.44 RCW to create and recognize new standards of civil liability; however, the majority here is not recognizing a new duty for the first time but rather modifying a preexisting duty amply supported by our own precedent. Again, there is no dispute over whether Lucky Seven owed Barrett a duty. The question is the nature of that duty, which has time and again been defined as service to an "obviously intoxicated" person.

2. Misreading Precedent
The majority relies on Estate of Kelly, 127 Wash.2d 31, 896 P.2d 1245, as authority this court "implicitly found RCW 66.44.200(1) applicable as a standard of liability for harms caused to third parties." Majority at 390. Such analysis reads the case too broadly. We there held a commercial establishment owes no common law duty to an obviously intoxicated patron who is served and then injures himself in an automobile accident. Estate of Kelly, 127 Wash.2d at 38, 896 P.2d 1245. We relied on our "`repeated[] refus[al]' to impose broader exceptions to the common-law rule," id. at 37, 896 P.2d 1245 (quoting Christen, 113 Wash.2d at 494, 780 P.2d 1307), ultimately concluding such an extension "would usurp the Legislature's authority to weigh who should be held accountable for alcohol-related accidents," id. at 38, 780 P.2d 1307.
To support its claim the majority focuses on Estate of Kelly's rejection of the plaintiffs' alternative argument RCW 66.44.200(1) established a standard of care between commercial establishments and intoxicated patrons who injure themselves. See Kelly, 127 Wash.2d at 38, 896 P.2d 1245 ("The Patrons argue that even if the court rejects liability under the common-law rule, RCW 66.44.200 establishes a duty of care on commercial vendors.") (emphasis added). Simply because we rejected RCW 66.44.200 in the first person context does not mean we implicitly adopted it in the third person context. Furthermore Estate of Kelly was based on the decision to foster personal responsibility over excessive parenting: "Given a choice between a rule that fosters individual responsibility and one that forsakes personal accountability, we opt for personal agency over *402 dependency and embrace individual autonomy over paternalism." Id. at 42, 896 P.2d 1245 (emphasis added). What is worth saying is worth repeating. See supra at 387.
Additionally, Estate of Kelly considered the issue left open by Barrie v. Hosts of America, Inc., 94 Wash.2d 640, 618 P.2d 96 (1980). Barrie declined to consider whether a commercial establishment owed a duty in the first place to an intoxicated patron who injured himself in a one-car accident, concluding summary judgment of dismissal was appropriate "because [the plaintiff] ... failed to establish, by competent evidence, that the decedent was in an obviously intoxicated condition while in respondent's lounge." Id. at 642, 618 P.2d 96. Thus, if a duty did exist between the establishment and the intoxicated patron who injured himself, that duty would be to cease service when the patron was "obviously intoxicated." Id.
If Estate of Kelly "implicitly adopted" anything, it is the rule that has been stated time and time and time again: "[a] tavern or other commercial vendor may be held liable if it serves alcohol to an obviously intoxicated patron who injures or kills a bystander in a drunk driving accident." Estate of Kelly, 127 Wash.2d at 37, 896 P.2d 1245 (citing Dickinson, 105 Wash.2d 457, 716 P.2d 814). That the majority elects to view this case as unique is surprising, given Estate of Kelly: Lucky Seven is "[a] tavern or other commercial vendor," that served alcohol to Maher, an allegedly "obviously intoxicated patron," "who injure[d]" Barrett, a "bystander," "in a drunk driving accident." Id.
Regardless of the relationship between the server of alcohol, the intoxicated patron, and the injured party, the fundamental rule from Halvorson has not changed: liability for another's injuries remains on the intoxicated patron's shoulders until such time that person becomes so inebriated he or she is deprived of any will power to say, "No, I don't need another drink." Only then does liability shift from the intoxicated wrongdoer to the furnisher of alcohol, because "`the drinking of the liquor is the proximate cause of the injury, not the furnishing of it.'" Halvorson, 76 Wash.2d at 762, 458 P.2d 897 (quoting 30 AM.JUR. Intoxicating Liquors § 520 (1958)). Nothing in the majority opinion or briefing to this court or the Court of Appeals demonstrates a person "apparently under the influence" automatically loses all self-control that liability should shift away from his or her irresponsible conduct.
To the contrary we have consistently characterized this condition of lacking will power as "obviously intoxicated." Were it the legislature's intent to completely shift liability from the intoxicated wrongdoer to the commercial establishment, the legislature would not have retained the negligence per se doctrine for "driving while under the influence of intoxicating liquor or any drug," all the while abolishing it in virtually all other cases. RCW 5.40.050.[6]

CONCLUSION
Rather than blindly follow the permissive Restatement test, I would instead consider this issue in light of the stare decisis principle that we adhere to a previous holding absent "`a clear showing that an established rule is incorrect and harmful.'" Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co., 142 Wash.2d 431, 442, 13 P.3d 622 (2000) (quoting Waremart, Inc. v. Progressive Campaigns, Inc., 139 Wash.2d 623, 634, 989 P.2d 524 (1999)). Barrett's burden to overrule the "obviously intoxicated" standard is a substantial one. Id. As we noted over three decades ago:
Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office.
In re Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970). The majority does not even attempt to demonstrate the "obviously intoxicated" standard is either incorrect or *403 harmful, much less both. It is not our role to judicially broaden the exceptions to the general rule of nonliability. If the exceptions are to be broadened, it is the legislature which should do it. Estate of Kelly, 127 Wash.2d at 38, 896 P.2d 1245; Christen, 113 Wash.2d at 494, 780 P.2d 1307; Burkhart, 110 Wash.2d at 383, 755 P.2d 759.
Stare decisis is not a doctrine to be lightly disregarded, even in life and death situations. See Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 854-61, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion of O'Connor, Kennedy, and Souter, JJ.). Nor is it appropriate to retroactively change the standard of liability to promote a monetary recovery against a hapless merchant because the real wrongdoer is financially exhausted. The majority undermines that certainty which allows us to conform our future actions to a preexisting rule of law.
I dissent.
MADSEN, J. (concurring in the dissent).
In order to obtain a new trial, petitioners must show reversible error. However, they have failed to establish that there is any meaningful difference between serving alcohol to one who is obviously intoxicated and serving alcohol to one who is apparently under the influence of liquor.[1] Because the petitioners have failed to establish a difference, it follows that they have failed to show prejudice resulting from the trial court's refusal to instruct the jury that liability may arise from the negligent serving of alcohol to one who is apparently under the influence of liquor as opposed to one who is obviously intoxicated. They have thus failed to demonstrate reversible error. I would hold that the petitioners are not entitled to a new trial. Accordingly, I concur in the result reached by the dissent.

Discussion
Petitioners Jeffrey A. Barrett and John R. Barrett, Jr., his guardian, have maintained in a number of related arguments that it was error to refuse to instruct the jury in the language of RCW 66.44.200(1), which prohibits the sale of alcohol "to any person apparently under the influence of liquor." It is clear that they believe there is a difference between this standard and the rule stated in a number of cases, i.e., civil liability for negligence of a commercial establishment may arise from serving alcohol to one who is obviously intoxicated. But the Barretts' assumption that there is a legally significant difference in the two formulations is never adequately explained.
The Barretts have the burden of showing instructional error that prejudiced them in order to obtain reversal and a new trial. Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). Because they have not shown how the two standards are legally and significantly different, they clearly have not met their burden of showing reversible error and should not obtain the benefit of a new trial. In reaching this conclusion, I note that amicus curiae Washington State Trial Lawyers Association Foundation makes a fairly strong argument that there is, in fact, no legally significant difference and that this court has so indicated in previous cases.[2] I do not foreclose the possibility that a legal distinction does exist, but it is up to the petitioners to make the persuasive case. *404 They have not provided any argument on which the court can base a conclusion that the failure to give instructions on the "apparently under the influence" standard made any difference. Nor, I add, has respondent Lucky Seven Saloon, Inc., made sufficient argument to the contrary.
Indeed, the parties share the assumption that a distinction lies, and the majority accepts the assumption. Majority at 389. However, as Justice Sanders correctly notes, this court is not bound by an erroneous concession as to the law. Dissent at 395 n. 3; see In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 875, 50 P.3d 618 (2002); Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 301, 840 P.2d 860 (1992); In re Dunn's Estate, 31 Wash.2d 512, 528, 197 P.2d 606 (1948). Since the parties may be wrong, this court should not simply acquiesce in the assumption. The majority also quotes dictionary definitions implying a difference. Majority at 390. However, the Barretts did not provide these definitions to this court or to the trial court in the form of an instruction and make no argument based upon them. The majority also cites Dickerson v. Chadwell, Inc., 62 Wash.App. 426, 814 P.2d 687 (1991) in support of its conclusion the two standards differ. However, as explained below, the Barretts' reliance on Dickerson is unpersuasive. Finally, the majority says that this court's grant of review presupposes that the standards differ meaningfully. Majority at 390. Even if true, the majority's presupposition does not satisfy the Barretts' obligation to establish reversible error.
Instead of explaining why the two standards differ, the Barretts claimed error in the trial court's refusal to give their proposed instructions defining "obvious" and "apparent" and distinguishing the two. Their proposed instructions posited that "obvious" means "easily understood, requiring very little insight or reflection to perceive, recognize or comprehend," in contrast to "apparent" which means something of "easy perception" and "requires at least some reflection and thought." Clerk's Papers (CP) at 772 (Pls.' Proposed Jury Instruction 56). Their explanation of what "apparent" means is based on Dickerson. I am not convinced there is any meaningful difference in these explanations of "obvious" and "apparent." "Easily understood" and of "easy perception" are virtually synonymous, as are "requiring very little insight or reflection" (indicating that at least some insight or reflection is required) and "at least some reflection and thought" (expressly stating that at least some reflection and thought is required). The Barretts have offered the same asserted but unconvincing distinction in their briefing. E.g., Pet'rs' Answer to Br. of Amicus Curiae at 8.
The Barretts have also argued that "obvious intoxication" means that someone is "falling down drunk, slurring words, vomiting, or tripping over his or her own feet," and that "apparently under the influence" is not "behavior so outrageous." Id. at 8, 7. Initially, the Barretts offer no authority for these claims. Their description of "obviously intoxicated" also goes well beyond the definitions they argue should have been given to the jury. Moreover, while it is probably true that someone in such a state after consuming alcohol is obviously intoxicated, it is equally within common understanding that one need not be "falling down drunk" to be obviously intoxicated.
Lastly, the Barretts have also indicated that the "apparently under the influence" standard should have been given so they could argue that the Lucky Seven Saloon violated this standard of care by serving Mr. Maher alcohol in sufficient quantities to put his blood alcohol concentration (BAC) over the legal limit for purposes of driving while under the influence of intoxicants. E.g., Pet. for Review at 1-3, 16. This court has made it abundantly clear, however, that a person's level of intoxication is not to be measured by a blood alcohol test but is instead to be measured by the person's appearance at the time alcohol is provided to the person. Christen v. Lee, 113 Wash.2d 479, 487-89, 780 P.2d 1307 (1989); Purchase v. Meyer, 108 Wash.2d 220, 223-28, 737 P.2d 661 (1987). In Christen, the court summarized its analysis in Purchase:
First, we noted that a furnisher of intoxicating liquor ordinarily has no way of knowing how much alcohol a person has consumed before entering the establishment. *405 Next, we observed that a person who is a heavy drinker may be legally intoxicated yet still not appear intoxicated. Finally, we explained that there are medically recognized variables in the way that alcohol may react on the human body.
Christen, 113 Wash.2d at 489, 780 P.2d 1307 (emphasis added) (footnotes omitted). The court also said "[e]vidence of the amount of alcohol consumed is not sufficient by itself to establish that a person was furnished intoxicating liquor while obviously intoxicated." Id. at 487, 780 P.2d 1307. It follows that civil liability cannot depend upon whether a commercial establishment provides enough alcohol to a person for his or her BAC to reach or exceed the legal limit. Not only do Christen and Purchase foreclose such an argument, it is unfair and unreasonable to place any such burden on commercial vendors of alcohol, who simply cannot be expected to judge an individual's BAC. Thus, insofar as the Barretts seem to suggest that the "apparently under the influence" standard must be given to permit this kind of argument, it is unavailing.
The Barretts have not established reversible error entitling them to a new trial because they have provided no basis for this court to conclude they were prejudiced by the instructions given.[3] It may be that given sufficient argument and authority, a valid distinction could be drawn. But these petitioners have not provided them. Therefore, I concur in the result reached by the dissent.
Finally, I agree with the dissent that there are legitimate grounds for distinguishing between civil liability standards for serving alcohol to minors and serving alcohol to adults. However, I believe our consistent application of the Restatement (Second) of Torts § 286 (1965) in this area calls for its continued application and so disagree with the dissent on this point. But, even assuming that application of section 286 leads to the majority's conclusion that the statutory standard is the appropriate standard of care, it does not change my view that these petitioners are not entitled to a new trial. Since they have failed to show any relevant difference in the two standards, they have failed to show that instructing on the "obviously intoxicated" standard rather than the statutory "apparently under the influence" standard prejudiced them. On the arguments they have advanced, there is no difference and no basis for ordering a new trial to substitute one set of language for the other.
NOTES
[1] The provision, which was designated subsection (1) in a 1998 amendment, dates to 1933. See Laws of 1998, ch. 259, § 1.
[2] A second suit against the Lucky Seven, brought by Barrett's wife on her own behalf and as guardian for their two children, was settled prior to trial.
[3] See Def.'s Mots. in Limine, § III.H. ("Testimony Regarding Behavior Evidencing `Apparent Intoxication' is Inadmissible, Because the Lucky Seven's Legal Duty is to Refrain From Serving `Obviously Intoxicated' Persons"). CP at 70.
[4] Barrett's previously proposed instruction had prefaced the sentence with "[a] Washington law provides." CP at 130, Pls.' Proposed Jury Instruction 23.
[5] Former RCW 66.44.320 (1973), repealed by Laws of 1999, ch. 189, § 4, prohibited the sale of alcohol to minors; RCW 66.44.270(1) forbids selling, giving, or supplying liquor to minors.
[6] Dickerson v. Chadwell, Inc., 62 Wash.App. 426, 435, 814 P.2d 687 (1991) (citing Christen, 113 Wash.2d at 503, 780 P.2d 1307), review denied, 118 Wash.2d 1011, 824 P.2d 490 (1992). The trial court and Court of Appeals in the present case indisputably misread the holding in Dickerson, applying its result (preclusion of the statutory standard), while ignoring its conclusion that, unlike harms caused by driver error, injuries arising from assault were beyond the scope of RCW 66.44.200(1). See RP (Mar. 15, 2000) at 66-67; Barrett v. Lucky Seven Saloon, Inc., noted at 112 Wash.App. 1041 (2002). Far from supporting the Lucky Seven's position, the analysis in Dickerson supports Barrett's view that RCW 66.44.200(1) should establish the commercial host's standard of conduct when a patron's subsequent driver error harms a third party.
[1] The precise colloquy went as follows:

THE COURT: [after describing the instructions to be given] Does the plaintiff have any objections or exceptions to the court's instructions as I have given them to you after which you may then address refusal to give proposed instructions.
MR. CHALVERUS [Barrett's attorney]: We have no objections to the instructions given.
Report of Proceedings (Apr. 6, 2000) at 16 (emphasis added).
[2] This rule precludes appellate review of issues raised for the first time on appeal unless the issue involves a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The standard of care a commercial establishment owes to an injured person can hardly be considered as "affecting a constitutional right." Id.
[3] Compare WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 102 (1981) (defining "apparent" as "capable of being readily perceived by the sensibilities or understanding as certainly existent or present") with id. at 1559 (defining "obvious" as "capable of easy perception; ... readily and easily perceived by the sensibilities or mind"). That the parties concede the terms differ should be of no concern, as this court is not bound by erroneous concessions of law. State v. Knighten, 109 Wash.2d 896, 901-02, 748 P.2d 1118 (1988). Nonetheless, because the majority elects to chip away at the "obviously intoxicated" standard which permeates our jurisprudence, I will proceed under the assumption the terms are different.
[4] A civil damage act is another term of art to describe a dramshop act, such as the one Washington's legislature repealed in 1955. See Theresa J. Rambosek, Comment, A Wavering Line? Washington's Rules of Liability For Furnishers of Alcohol, 24 GONZ. L.REV. 167, 168 (1989).
[5] "Every person who shall sell any intoxicating liquor to any minor shall be guilty of a violation of Title 66 RCW." Former RCW 66.44.320 (1998), repealed by LAWS OF 1999, ch. 189, § 4.
[6] Negligence per se still exists in cases where there is a statutory or administrative regulatory violation in relation to electrical fire safety, smoke alarms, the sterilization of needles and instruments used in tattooing, and hair removal by electrology. RCW 5.40.050.
[1] Significantly, amicus curiae Washington State Trial Lawyers Association Foundation (WSTLAF) argues there is no difference and criticizes what it terms "the erroneous premise that the common law and statutory formulations of the standard of civil liability of a seller of alcohol are different." Br. of Amicus Curiae WSTLAF at 17.
[2] I also believe it is important to bear in mind both that the legislature repealed the Dramshop Act (former RCW 4.24.100 (1905)) decades ago and that the legislature is undoubtedly aware of this court's reliance on statutes to define standards of care for the provision of alcoholic beverages. The legislature also may be presumed to be aware of the court's previously stated "obviously intoxicated" standard for civil liability. Nonetheless, the legislature has not seen fit to amend RCW 66.44.200(1). It could be argued that since the statutory standard has not been altered, the legislature itself does not see any relevant distinction in the "obviously intoxicated" standard and the "apparently under the influence of liquor" standard in RCW 66.44.200(1). See Br. of WSTLAF at 3 (stating that the "apparently under the influence of liquor" standard in RCW 66.44.200(1) "is the legislative expression of the `obviously intoxicated' negligence standard").
[3] Amicus WSTLAF argues that a jury should be instructed in the language of the statute. An instruction in the language of a statute is appropriate only where "the statute is applicable, reasonably clear, and not misleading." Bell v. State, 147 Wash.2d 166, 177, 52 P.3d 503 (2002). However, while it may be proper for a trial court to instruct in a statute's language, the court is not required to do so. Kastanis v. Educ. Employees Credit Union, 122 Wash.2d 483, 497, 859 P.2d 26, 865 P.2d 507 (1993). And, if a statute provides an incomplete and therefore misleading standard, it is erroneous to instruct on negligence in the language of a statute. Stewart v. State, 92 Wash.2d 285, 291-92, 597 P.2d 101 (1979).